**Elmer Dale McDANIEL,
Plaintiff-Appellant,**

v.

**Patricia R. HARRIS, Secretary of Health and Human Services,
Defendant-Appellee.**

No. 80–1862
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 20, 1981.

Kearby Peery, Wichita Falls, Tex., for plaintiff-appellant.

Anthony W. Vaughn, Asst. U. S. Atty., Fort Worth, Tex., for defendant-appellee.

Before POLITZ, TATE and SAM D. JOHNSON, Circuit Judges.

TATE, Circuit Judge:

Elmer Dale McDaniel seeks reversal of the decision of the Secretary of Health and Human Services denying him disability benefits. On review before the district court under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), the Secretary's decision was upheld as supported by substantial evidence. We are unable to agree with the district court's finding and therefore vacate and remand.

*Context Facts*

On February 13, 1978, McDaniel, then a twenty-four-year-old house painter, suffered a close-range gunshot wound to the abdomen which produced multiple blood vessel injury to the bowel and perforation of the stomach and small bowel. The bullet lodged in the left side of the third lumbar vertebra, causing nerve injury, especially to the left lower extremity. Corrective surgery was performed on February 13 and 14 and March 22, 1978. Upon his release from the hospital on April 4, 1978, McDaniel was experiencing bowel dysfunction, including uncontrollable diarrhea and constipation; weakness in the lower left extremity; and a total left foot drop. He was required to wear a short-leg brace and use a crutch to walk.

On March 31, 1978, McDaniel filed an application for disability benefits, alleging

that he became disabled on February 13, 1978. The application was denied initially and on reconsideration by the Social Security Administration. On November 30, 1978, the Administrative Law Judge (ALJ) heard the case *de novo* and determined that McDaniel was not disabled because his impairments did not last the requisite twelve-month period. The Appeals Council approved the ALJ's decision on June 29, 1979, thus making it a final decision of the Secretary and reviewable under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). On appeal, the district court granted summary judgment in favor of the Secretary, finding that there was substantial evidence in support of her decision. The district court's judgment is now presented for review by this court.[1]

*The Standard of Review*

■ Judicial review of the Secretary's findings is limited to a determination of whether they are supported by substantial evidence. Section 205(g), 42 U.S.C. § 405(g).[2] When an appeal is taken from a summary judgment granted in favor of the Secretary, the review functions of this court, while virtually the same as those performed by the district court, are nevertheless to be performed independently, carefully, and without any presumption that the decision of the district court is correct. *Knox v. Finch*, 427 F.2d 919, 920 (5th Cir. 1970).

*The Statutory Framework*

Provision is made in section 223 of the Social Security Act, 42 U.S.C. § 423, for the payment of disability insurance benefits to eligible individuals who are "under a dis-

ability." Section 223(d)(1)(A), 42 U.S.C. § 423(d)(1)(A), defines disability as the

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Moreover, an individual shall be determined to be under a disability

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Section 223(d)(2)(A), 42 U.S.C. § 423(d)(2)(A).

The burden is on the individual seeking the disability insurance benefits to prove that he is under a disability within the terms of the Act. Section 223(d)(5), 42 U.S.C. § 423(d)(5). However, once the claimant meets the burden of showing that he cannot perform his usual line of work, the burden shifts to the Secretary to show that considering his age, education, and work experience, the claimant is able to perform some other kind of substantial, gainful work available in the national economy. *Western v. Harris*, 633 F.2d 1204 (5th Cir. 1981).

*The Substantiality of the Evidence*

■ Although our review function on appeal from the Secretary's decisions is limit-

---

1. Despite the appellant-McDaniel's failure to file a timely notice of appeal under Rule 4(a), Fed.R.App.Proc. (the July 23, 1980 filing was effected more than 60 days after the May 15, 1980 entry of the district court's judgment), the appeal is sustained on the basis of the July 8, 1980 application for leave to appeal in forma pauperis (subsequently granted by the district court), which this court has held is sufficient to constitute substantial compliance with the no-

tice of appeal requirements. *Des Isles v. Evans*, 225 F.2d 235, 236 (5th Cir. 1955).

2. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).

ed—and consequently the reversal of those decisions is infrequent—,[3] we must nevertheless review the record in its entirety in order to fulfill our duty of ensuring the reasonableness of the decision reached. *Simmons v. Harris,* 602 F.2d 1233, 1236 (5th Cir. 1979). Keeping in mind our limited but essential appellate function, we nevertheless hold that such substantial evidence does not support the Secretary's finding that McDaniel was not disabled because, prior to the expiration of the twelve-month disability period,[4] he had so recovered from his injury that he could engage in substantial gainful work existing in the national economy.

The Secretary found, and we agree, that McDaniel satisfied his burden of proving that his impairments preclude his return to his previous work as a house painter. However, the Secretary, relying on expert medical opinions provided by four examining physicians,[5] found that McDaniel had the residual functional capacity to engage in numerous types of sedentary work.

The Secretary's reliance on these medical opinions is misplaced for several reasons. Each of the opinions was rendered within four months of the claimant's injury and, consequently, consisted of *predictions* that the still-disabled McDaniel's condition would improve. None of the examining physicians, however, stated that the improvements would occur *within* the statutory twelve-month disability period. Moreover, a medical opinion rendered by Dr. Harry Ledbetter on April 5, 1979, well over a year after the injury, and based on the most recent examination of the claimant, actually supports a finding that no improvement in McDaniel's condition occurred during the twelve months following the inju-

---

**3.** Various panels of this circuit have nevertheless on occasion overturned the Secretary's decision to deny benefits where the finding of non-disability is not supported by substantial evidence. See, e. g., *Western v. Harris, supra; Epps v. Harris,* 624 F.2d 1267 (5th Cir. 1980); *Simmons v. Harris,* 602 F.2d 1233 (5th Cir. 1979); *Mims v. Califano,* 581 F.2d 1211 (5th Cir. 1978); *Stubbs v. Mathews,* 544 F.2d 1251 (5th Cir. 1977); *Lewis v. Weinberger,* 515 F.2d 584 (5th Cir. 1975); *Payne v. Weinberger,* 480 F.2d 1006 (5th Cir. 1973); *Rivas v. Weinberger,* 475 F.2d 255 (5th Cir. 1973); *DePaepe v. Richardson,* 464 F.2d 92 (5th Cir. 1972); *Williams v. Finch,* 440 F.2d 613 (5th Cir. 1971).

**4.** See H. McCormick, Social Security Claims and Procedures, § 413 p. 348 (2d ed. 1978) ("Although a claim in effect is filed for total and permanent disability under the Social Security Act, the so-called "12 month" disability period is essentially a statutory definition of permanent disability.")

**5.** Dr. W. L. Parker, director of the rehabilitation unit attended by McDaniel, reported on May 16, 1978, that McDaniel should eventually become independent in ambulation with the use of his short leg brace and that, in time, his bowel problems will subside. Dr. Parker concluded that McDaniel "has a good vocational potential." (Ad.Rec. at 123–124).

Dr. J. Martin Brown, a clinical psychologist, evaluated McDaniel on May 11, 1978, and concluded: "In view of his high level of professed and observed motivation during his work in the rehabilitation program here, I did not see any significant emotional factors which should hamper or interfere with efforts to help rehabilitate him occupationally in the future." (Ad. Rec. at 126).

The operating physician, Dr. Richard B. Shaw, stated with regard to McDaniel's bowel dysfunction: "The chances are that probably as the months and years wear on additional blood supply will grow into the mesentery of the gut and the situation will gradually improve. However, until that occurs, I think that we may indeed have a management problem, and I'm not sure at this point, exactly how we are going to approach it." (Ad.Rec. at 129) Dr. Shaw was on the whole pleased with McDaniel's rehabilitation progress and hoped for better progress in the future.

Based on a thorough physical examination of McDaniel on June 27, 1978, Dr. Paul Renton determined that McDaniel would not be able to stand or walk for too great a period of time, nor would he be able to do much in the way of bending, stooping, lifting, or climbing. Based of McDaniel's ability to sit for extended periods, Dr. Renton suggested that he might want to consider an occupation chiefly involving use of the brain and hands and the right leg to some extent. However, Dr. Renton concluded: "I feel that he is going to have significant total and *permanent* disability because of his left leg weakness and discomfort. He may experience some improvement within the next year, but then I believe the findings at that time will be permanent." (Ad.Rec. at 135)

ry.[6] Thus, the earlier, positive prognoses based on observations made less than four months following the injury were improperly relied upon by the Secretary in the face of Dr. Ledbetter's more recent opinion based on actual observation of the claimant's condition more than a year after the injury.

The Secretary also asserts, without supporting vocational evidence, that there exists in the national economy substantial gainful work of a sedentary nature available to one with McDaniel's impairments, age, and educational level.[7] The Secre-

tary's assertions were not supported by the expert medical evidence, which on the whole did not address the specific issue of McDaniel's ability to work in particular jobs.[8] Nor did the Secretary rely on vocational testimony in determining what jobs would be available that McDaniel is capable of performing. This circuit has required in the past that the Secretary rely on evidence (rather than suppositions) of the existence of employment positions in the economy that the claimant could fill. See *Lewis v. Weinberger*, 515 F.2d at 584, 587–88 (5th Cir. 1975); *Daniel v. Gardner*, 390 F.2d 32 (5th Cir. 1968). In the absence of medical

---

6. Dr. Ledbetter's report was based on an examination of the claimant subsequent to the decision by the ALJ rejecting his disability claim based upon the hopeful prognostications of the initial treating physicians that the disabling impairments might be lessened within a twelve months period. It was received as evidence by the Appeals Council (Ad.Rec. at 159); it was considered by the Appeals Council but evaluated as containing an assessment "generally consistent" with that of the ALJ (Ad.Rec. at 4–4). It is difficult to so evaluate it. After making extensive physical findings, the report concludes (Ad.Rec. at 161–61):

> In summary, this man has extensive paralysis of the left lower extremity, which has now been present for over a year and was the direct result of a bullet passing through the spinal canal. There is no reasonable expectation that this will improve and he will be relegated to wearing a foot drop brace and using a crutch from now on. He has evidence of some nerve injury involving the right lower extremity with an incomplete lesion in that he has absence of the reflex of both the knee and the ankle and has pain distribution corresponding to the nerves involved by injury at the 3rd lumbar disc level, and there is no reason to believe that this pain will not be permanent.
>
> He had substantial involvement of the stomach and duodenum, which were repaired, but he had considerable vascular damage which was not repairable. He has had intermittent diarrhea ever since the injury, requires medication when it is present, and it is a very urgent diarrhea when present and he will be relegated to taking medications in all medical probability for the control of this diarrhea from now on.
>
> This man is totally incapable of doing any type of manual labor and will not be able to do so any time in the future. Since both sitting and standing are painful for him, if it continues for any lengthy period of time, and

since he has a diarrhea of rather explosive nature, it is going to be a problem to train him in any type of sedentary work that requires him to be hired out to someone else.

7. The ALJ's opinion, adopted by the Secretary, found:

> This functional loss of the lower left extremity would probably preclude the claimant from engaging in his past work as a house painter and would further limit him from doing any work requiring repeated standing or walking. However, he is still of youthful age (age 25), and has a 12th grade education. It is felt that he continues to have the residual functional capacity to engage in numerous types of work activity of sedentary and light nature in various instrument and electronic equipment industries in which he could do numerous types of bench work in the area of sorting, fitting, assembling and packaging small objects. In addition, the claimant has the residual functional capacity to engage in other sedentary and light occupations, such as, cashier; toll booth operator; self-service station attendant; counter man or stockroom clerk, small parts; or payroll clerk.

8. In an opinion dated May 16, 1978, Dr. W. L. Parker did state that McDaniel should be able to resume an occupation similar to house painting, subject to the physical limitations imposed by the weakness in his left lower extremity. However, this opinion was predicated on improvement in McDaniel's condition to the extent anticipated by the earlier examining physicians. As Dr. Ledbetter's later report supports, McDaniel's condition has not improved. In fact, Dr. Ledbetter concluded that McDaniel was totally incapable of doing any kind of manual labor and would find sedentary work painful and difficult due to his continued bowel dysfunction.

testimony that McDaniel is not physically disabled (or that he can do work of a sedentary nature), we cannot accept the Secretary's suppositions that the claimant might be able to perform certain available types of employment, without more, as substantial evidence in support of the finding of non-disability. See *Mims v. Califano*, 581 F.2d 1211, 1215–16 (5th Cir. 1978); *Williams v. Finch*, 440 F.2d 613, 615–16 (5th Cir. 1971).

*Conclusion*

Based on the absence of any evidence that McDaniel is not physically disabled—or that there is substantial gainful work existing in the national economy which he can do—, we find that the Secretary's decision is not supported by substantial evidence. We remand the case to the district court so that it may issue an appropriate order directing the Secretary to grant the appellant the disability benefits to which he is entitled in accordance with this opinion.

REVERSED AND REMANDED.