**Mary J. DORSEY, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 82–4196.

United States Court of Appeals, Fifth Circuit.

April 11, 1983.

---

Laurel G. Weir, Philadelphia, Miss., for plaintiff-appellant.

George Phillips, U.S. Atty., E. Donald Strange, Asst. U.S. Atty., Paula L. Kocher, Asst. Regional Atty., Dept. of Health & Human Services, Atlanta, Ga., for defendant-appellee.

Before THORNBERRY, GEE and REAVLEY, Circuit Judges.

THORNBERRY, Circuit Judge:

■ Mary Dorsey, a fifty-two year old woman who claims various physical and psychological ailments have disabled her from pursuing gainful employment, appeals from a district court affirmance of the Secretary of Health and Human Services' (the Secretary's) denial of her disability[1] and supplemental security income[2] claims under the Social Security Act (the "Act"), and the denial of her Motion to Remand for consideration of new medical evidence regarding mental ailments.[3] The decision below is in part affirmed, but will be remanded for consideration by the Secretary of new medical evidence pertaining to Dorsey's mental condition. Finding substantial evidence to support the Secretary's determination with respect to Dorsey's claims arising out of, or related to, her 1975 left leg injury, we affirm those portions of the administrative determination below which are not inconsistent with reconsideration of Dorsey's claims in light of previously unpresented medical evidence of serious mental ailments. We conclude that the magistrate erred in failing to remand Dorsey's case for further consideration by the Secretary since the evidence submitted to the district court was (i) new, (ii) material, and (iii) could not have been incorporated into the record in a prior proceeding. Since a reasonable possibility existed that such evidence would have changed the outcome of the Secretary's determination, we remand.

I. *Facts.*

Mary Dorsey has a tenth grade education, and worked for approximately eighteen years, until 1971, as a sewing machine operator. She has since been employed as a hospital dietician's assistant and as manager of a bakery.[4]

In October 1975, Dorsey broke her left leg, which she contends healed badly, leaving her in constant disabling pain in the leg itself, as well as in her hip and back. She also ascribes a "nervous" condition, originally diagnosed as "chronic anxiety" and "depression" by her primary treating physician, Dr. John Lee, at least in part to the injury and its aftermath.

For present purposes, it will suffice to say that Dorsey's claims of physical ailments related to her 1975 leg injury have been subjected to extensive medical and administrative evaluation since the accident. Dorsey initially sought Title II and SSI benefits shortly after the accident, but the applications were denied. On hearing before an administrative law judge (ALJ), she was granted a closed period of disability from October 1975 until June 1977. Dorsey was also awarded SSI benefits from March 18, 1976 through June 1977. This decision was not contested beyond the administrative review level, and is not now before us on appeal. [The Appeals Council denied her request for review on March 5, 1979 and an appeal to federal district court was not taken.] Dorsey again filed applications for Title II benefits and SSI on January 26, 1978. On January 30, 1979, an administrative law judge issued a decision finding that since June 21, 1977, claimant had not been disabled and was not entitled to Title II benefits or SSI. This decision became a final decision on January 30, 1979, after the Appeals Council denied review and claimant did not pursue a court review. Thus, the

---

1. 42 U.S.C. § 401 *et seq.* ("Title II benefits" or "disability benefits").

2. 42 U.S.C. § 1381 *et seq.* ("SSI benefits" or "Title XVI benefits.")

3. Pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), 1383(c)(3). Since the relevant laws and regulations governing claims for disability and supplemental income benefits are similar, we treat the two claims together to the extent possible. *Rivers v. Schweiker*, 684

F.2d 1144, 1146 n. 1 (5th Cir.1982). We depart from this joint treatment in part III C of this opinion.

4. An allusion to the latter employment is made in a social worker's report submitted as an exhibit in Dorsey's original motion to remand presented in the district court; no evidence whatsoever of such employment was presented during the course of the administrative proceedings.

previous decisions, granting claimant a closed period of benefits and denying benefits from June 21, 1977 to January 30, 1979, became final. Since the previous decisions were not reopened, these decisions are final and are not now before us on appeal.

The present proceeding was commenced November 9, 1979, when Dorsey filed new applications for disability insurance and supplemental security income benefits. These applications were denied February 15, 1980, and Dorsey sought and obtained *de novo* review and a hearing before an ALJ on May 2, 1980. On July 9, 1980, following a consultative examination of Dorsey by an orthopedic surgeon performed at the ALJ's request, a decision was entered denying Dorsey's claims. Upon consideration of conflicting medical evidence from Dr. John Lee (a family practice specialist and the plaintiff's primary treating physician), Dr. James Hughs (Chief of Orthopedic Surgery at Mississippi Medical Center, also named by Dorsey as her doctor), Dr. W. Lamar Wilkerson (a chiropractor, not in the 1979 American Medical Directory), and Dr. John Gassaway (the orthopedic surgeon retained at the ALJ's request), as well as testimony by Dorsey herself, and the record from prior proceedings, the ALJ determined that she was not under a "disability" within the meaning of the Social Security Act since "there were no objective findings presented that would prevent her from returning to the type of work that she performed as a dietician's assistant."[5]

With respect to Dorsey's claim of mental disability, the ALJ observed the paucity of evidence in the record before him providing support for this claim:

In re claimant's "nervous" condition, Dr. Lee gives her a diagnosis of chronic anxiety. However, there is no other mention of mental disorder or nervous problem in the entire record. Further, apparently, claimant has not had a severe condition inasmuch as there is no mention that she has tried to obtain the services of a psychiatrist or psychologist.

Dorsey requested a review of the ALJ's decision on July 16, 1980. This was denied by the Appeals Council on August 11, 1980, either immediately before or immediately after her release from St. Dominic Hospital in Jackson, Mississippi, where she had been admitted on July 30, 1980, complaining of hallucinations, anxiety, and depression.[6]

On August 29, 1980 (two and a half weeks after the Appeals Council decision, and at most, twenty days after Dorsey's release from her hospitalization), an action was brought in federal district court appealing the Appeals Council determination. In a letter dated September 3, 1980, and addressed to the Mississippi State Disability Determination Services in Jackson, Dorsey's treating physician, Dr. Lee, outlined the August hospitalization and stated that Dorsey was now at home under his care, and totally disabled. On the basis of Dr. Lee's diagnosis, and the August hospitalization, Dorsey's counsel moved in November 1980 to have the entire case remanded to the Secretary for consideration of the new medical evidence concerning Dorsey's psychological condition. Hospital records and Dr. Lee's letter were appended to the mo-

5. Although the ALJ speculated that Dorsey might not be able to return to employment as a sewing machine operator, we note that she had not been so employed for approximately four to five years before the 1975 accident.

6. The hospitalization is shown by a physician's statements and a hospital report from the psychiatric unit attached to a motion to remand. The general practitioner's statement also shows that Dorsey was hospitalized a second time for treatment during the same month, at the S.E. Lackey Hospital in Forest, Mississippi. By a subsequent statement of the family physician of April 15, 1981, attached to a supplemental motion to remand, Dorsey is alleged to be still suffering from the hallucinations and depression that began in July 1980 and to be disabled from work because of "manic depressive psychosis."

It is unclear from the record whether Dorsey was hospitalized sixteen days and released on August 15 (as she claims), or hospitalized nine days and released on August 9. Since Dorsey was released at most two days before the date of the Appeals Council decision, resolution of this factual question is not necessary for proper resolution of the legal question of whether Dorsey's failure to present her new medical evidence in a prior proceeding was excusable.

tion. No answer was ever filed by the Secretary, and the motion was never scheduled for hearing.

The record contains no explanation of the lengthy delay before the magistrate ruled upon Dorsey's appeal filed in district court on August 29, 1980 and her motion to remand filed on November 17, 1980. More than a year and a half passed before the motion to remand was considered at all, and then only in the context of the magistrate's opinion and order. The government first filed an answer in December 1980, and moved in March 1981 for a summary affirmance of the Secretary's decision. Dorsey renewed her motion to remand on April 23, 1981, appending an additional letter from Dr. Lee (dated April 15, 1981, and stating that her disabling mental condition had not improved). No opposition was filed by the government, and the motion was never scheduled for hearing. On May 17, 1982, more than one year later, the magistrate issued an opinion and order denying Dorsey's appeal and motion to remand.

In its opinion, the magistrate denied Dorsey's motion to remand in a single paragraph, suggesting that "the additional medical evidence should have been presented to the Appeals Council pursuant to Regulation 404.970."[7] In support of his denial, the magistrate cited 42 U.S.C. § 405(g), and our recent decision in *Chaney v. Schweiker,* 659 F.2d 676 (5th Cir.1981), concluding without further explanation that "there is no new material evidence and good cause for remanding this action . . . ."

## II. *Issues.*

On appeal, Dorsey contends (1) that the ALJ gave undue emphasis to the opinions of Dr. Gassaway (the orthopedic surgeon who examined Dorsey at the ALJ's request) and insufficient consideration to subjective evidence of pain and disability; (2) that the

magistrate and Appeals Council erred by uncritically affirming, or "rubber-stamping," the ALJ's decision; (3) that testimony by a vocational expert was necessary to establish what jobs in the national economy Dorsey could perform; and (4) that the magistrate erred by failing to remand the case to the Secretary for consideration of new material evidence of disability.

## III. *Analysis.*

### A. *General Legal Principles Applicable to Determinations by the Secretary*

In reviewing decisions by the Secretary, the scope of this court's review is limited to determining whether substantial evidence exists in the record to support the decision that the plaintiff is not under a "disability" as defined by the Social Security Act. *Olson v. Schweiker,* 663 F.2d 593, 595 (5th Cir.1981). The appellate court must scrutinize the entire record to determine whether such evidence does exist, *Millet v. Schweiker,* 662 F.2d 1199, 1201 (5th Cir.1981), but it may not reweigh the evidence or substitute its judgment for that of the Secretary. *Perez v. Schweiker,* 653 F.2d 997, 999 (5th Cir.1981). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion. *Id.,* 653 F.2d at 999; *Anderson v. Schweiker,* 651 F.2d 306, 308 (5th Cir.1981).

One seeking a period of disability or disability insurance benefits must show that he is unable to "engage in any substantial gainful activity by reason of any medical determinable physical or mental impairment which can be expected to result in death or which has lasted or which can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A). The burden is upon the claimant to demonstrate that he is no longer capable of performing his past work.

7. We note that 20 C.F.R. § 404.970 ("Cases the Appeals Council will review") does not bar from subsequent judicial consideration evidence that a claimant fails to present to the Council. The regulation simply *allows* claimants to supplement their records on appeal if they choose to do so. The only requirement imposed by the regulation falls not on the claimant, but on the agency. Where such evidence is "new" and "material," the Appeals Council must reevaluate the entire record as supplemented to determine whether the weight of the evidence has now shifted in the claimant's favor.

*Wilkinson v. Schweiker,* 640 F.2d 743, 744 (5th Cir.1981). If the claimant carries this burden, the burden then shifts to the Secretary to show that the claimant is capable of engaging in some other type of substantial gainful employment. *Ferguson v. Schweiker,* 641 F.2d 243, 246 (5th Cir.1981); *Rivers v. Schweiker,* 684 F.2d 1144, 1151 (5th Cir. 1982); *Millet v. Schweiker,* 662 F.2d at 1201; *Perez v. Schweiker,* 653 F.2d at 999.

■ We note further that in a case like this one where an appeal is taken from a summary determination in favor of the Secretary, the review function of this court is akin to that of the district court. Our review must be made independently and without the assumption that the district court acted correctly. *Olson v. Schweiker,* 663 F.2d at 595; *McDaniel v. Harris,* 639 F.2d 1386, 1388 (5th Cir.1981).

B. *Substantial Evidence Supported the Determinations of the Secretary*

(1) The ALJ's Evaluation of Subjective Evidence of Pain and of Conflicting Medical Testimony

■ In reviewing the ALJ's evaluation of Dorsey's allegedly disabling pain in the face of conflicting medical testimony, we reiterate that it is not necessary that we reach the same conclusion ourselves. Ordinarily, substantial weight must be given to the opinion, diagnosis and medical evidence of the claimant's treating physician. *Perez v. Schweiker,* 653 F.2d at 1001. It is also well established that pain alone can be disabling, even when its existence is unsupported by objective evidence. *Wiggins v. Schweiker,* 679 F.2d 1387, 1390 (11th Cir. 1982); *Benson v. Schweiker,* 652 F.2d 406, 408–09 (5th Cir.1981). Viewing the record before us in light of these principles, we cannot say that the ALJ's determination in resolving the conflicting evidence was not supported by substantial evidence. The ALJ carefully considered the testimony of all four doctors:

It is rather obvious from the above discussed objective medical documents that there are at least two different opinions in re claimant's actual condition. It is to be remembered: That Dr. Lee is a family practice specialist; that Dr. Wilkerson apparently is a chiropractor; that Dr. Gassaway is an orthopedic surgery specialist; and, that Dr. Hughes is chief of the orthopedic surgery division of the University of Mississippi Medical Center. In view of these qualifications, greater weight must be given the specialists in the orthopedic field. In essence, Dr. Hughes, supra, felt claimant had a healed fracture rendering her left leg 1 cm. shorter than her right leg, and, that claimant had a snapping hip type situation secondary to her leg length discrepancy. He felt, however, that claimant could benefit from a proper exercise program and analgesics. Dr. Gassaway found no abnormalities in claimant's spine and hip x-rays, and, found a healed fracture of claimant's tibia and fibula (left). Dr. Gassaway also observed claimant's gait which appeared to be fairly normal and smooth with no evidence of pain nor weakness in walking even without a limp. Also, Dr. Gassaway's physical capacities evaluation reflected only minimal restrictions of claimant's activities, and, that claimant could sit, stand, or walk for eight hours during a work day. It is obvious, of course, that Dr. Lee's interpretation of claimant's x-rays (Exhibit # C–27) greatly differs from Dr. Gassaway's x-rays and interpretation. However, as stated previously, the specialist's opinion must be given greater weight. However, Dr. Lee did state that claimant's overall prognosis "is good."

Similarly, the ALJ thoughtfully considered the effect to be given Dorsey's testimony that she continued to suffer constant and severely disabling pain. Finding that Dorsey's contentions were either contradicted or largely unsupported by medical and other evidence (including his own observation of the witness throughout the course of the hearings), the ALJ made every effort to give Dorsey's testimony due weight in his determination:

The Presiding Officer does not wish to minimize the pain and discomfort claim-

ant may suffer because of her physical impairments; however, the evidence of record does not disclose that her impairments, either singularly [sic] or in combination, are of such severity as to preclude her from all substantial, gainful activity. There is no evidence in the record that shows that claimant's pain is of such a severe or constant nature as to be disabling. Again, I wish to reiterate that I am not overlooking the pain the claimant alleges she sustains; however, the fact that a person cannot work without some pain or discomfort does not mean she is disabled within the meaning of the Act.

The ALJ concluded that Dorsey was capable of performing her previous work as a dietician's assistant, and was therefore not disabled within the meaning of the Social Security Act. References to 20 CFR §§ 404.1520(e) and 416.920(e) indicate that although the ALJ believed Dorsey suffered impairments, he nonetheless concluded that they were insufficient to prevent her from meeting the physical and mental demands of her past relevant work.[8]

(2) Appellate Review of the ALJ Determination Below

■ Dorsey next contends that the appellate proceedings below "rubber-stamped" the ALJ's decision. Accepting Dorsey's view that the findings of the ALJ may not be blindly accepted, she has nevertheless failed to substantiate her claim that the Appeals Council and the magistrate did in fact do so.

(3) The Need to Show Dorsey's Capacity for "Other Work"

■ Since we conclude that substantial evidence existed to support the ALJ's conclusion that Dorsey was not disabled, and was capable of returning to past relevant work, the Secretary was under no obligation to demonstrate, with or without expert

vocational testimony, Dorsey's capacity to perform any other work. *See* 20 CFR §§ 404.1520 and 416.920. *See Rivers v. Schweiker, supra,* 684 F.2d at 1154–55 (even where inability to engage in former employment is demonstrated, direct vocational testimony may not be necessary).

C. *The Magistrate's Failure to Remand for Consideration of New Evidence Regarding Dorsey's Mental Condition.*

Dorsey contends that her August 1980 hospitalizations and treating physician's diagnoses of complete mental disability (made in September 1980, and then again in April 1981) warranted remand to the Secretary for further consideration of his determination in light of the new evidence pursuant to 42 U.S.C. § 405(g). We agree.

■ On June 9, 1980, partly in an effort to stem the growing tide of unjustified federal court ordered remands, Congress amended 42 U.S.C. § 405(g). S.Rep. No. 408, 96th Cong., 2d Sess. 58–59, *reprinted in* 1980 U.S.Code Cong. & Ad.News 1277, 1336–37. The relaxed "good cause" standard for remand of disability benefits cases was replaced by the present requirement that evidence be (1) "new," (2) "material," and (3) that good cause be shown for the failure to incorporate such evidence into the record in a prior proceeding. In evaluating the materiality requirement under the 1980 amendment this court has held that it is no longer enough that the new evidence be relevant and probative, since much relevant and probative evidence is "of limited value and insufficient to justify the administrative costs and delay of a new hearing." *Chaney v. Schweiker,* 659 F.2d at 679. Rather, we have concluded that remand is justified only where there is a reasonable possibility that the new evidence would have changed the outcome of the Secre-

---

8. The ALJ referred to sections 404.1503(e) and 416.903(e) in making this determination. Those sections have been redesignated as sections 404.1520(e) and 416.920(e). Under these sections, a determination that Dorsey's impairments did not prevent her from doing past

relevant work rendered consideration of Dorsey's vocational capabilities (in the use of a vocational expert) unnecessary. *See* 20 CFR § 404.1520(a) ("If we can find that you are disabled or not disabled at any point in the review, we do not review further.")

tary's determination had it been before him. *Id.*[9]

Nevertheless, "[a]lthough § 405(g) of the Social Security Act limits the scope of this court's review of the Secretary's final decision, this provision is not as restrictive as a literal reading might initially suggest." *Essig v. Secretary of Health & Human Services,* 531 F.Supp. 55, 57 (E.D.N.Y.1981). This Court has repeatedly observed that "[t]he Social Security Act is to be broadly construed and liberally applied." *Williams v. Califano,* 590 F.2d 1332, 1334 (5th Cir.1979) (quoting *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir.1975)).[10] *See also Parks v. Harris,* 614 F.2d 83, 84–85 (5th Cir.1980); *Taylor v. Harris,* 505 F.Supp. 153, 154 (E.D.Tex.1981).

Consistent with this view of the Act, a final decision by the Secretary will be upheld by this court if it is supported by substantial evidence "on the record as a whole." *Cutler,* 516 F.2d at 1285. *See also Millet v. Schweiker,* 662 F.2d at 1201 (duty to scrutinize record in its entirety). It is clear, therefore, that where

> there are gaps in the record as to *material* facts, . . . this will cause a skewed view of the evidence that makes it impossible to conclude that a decision is supported by *substantial evidence.* . . . To this end, where it is clear that *material* evidence "was either not before the Secretary or was not explicitly . . . considered by him, . . . although such consideration was necessary to a just determination of a claimant's application," the matter should be remanded to the Secretary for the taking of that additional evidence.

*Essig,* 531 F.Supp. at 57 (citations omitted) (emphasis added).

The regulations promulgated by the Secretary under the Act emphasize this need to examine the totality of the evidence. *See* 20 C.F.R. §§ 404.1520, 416.920 ("[w]e consider all material facts to determine whether you are disabled"). *See also Hogan v. Schweiker,* 532 F.Supp. 639, 645 (D.Colo. 1982) (case remanded where ALJ failed to give full consideration to all relevant facts in the case as required by the regulations).

The need to consider all the available evidence in the record is particularly strong when a claimant has two or more impairments. Thus, under the regulations controlling the evaluation of disability, the Secretary "can combine unrelated impairments to see if together they are severe enough to keep [the claimant] from doing substantial gainful activity." 20 C.F.R. §§ 404.1522, 416.922. The courts have strictly construed these regulations in the claimant's favor. "Since the Secretary must evaluate the evidence in relation to the particular individual seeking benefits, where there are several illnesses suffered simultaneously by the claimant, the combined effect of the impairment *must be considered* before the Secretary denies the payment of disability benefits." *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3rd Cir. 1971) (citing *Dillon v. Celebrezze,* 345 F.2d 753, 755–57 (5th Cir.1965)) (emphasis added). *See also Wiggins v. Schweiker,* 679 F.2d 1387, 1392 (11th Cir.1982); *Brenem v. Harris,* 621 F.2d 688, 690 (5th Cir.1980); *Champion v. Califano,* 440 F.Supp. 1014, 1018 (D.D.C.1977) ("combined effects *must be considered* for the Act seeks to administer relief to the whole man and not simply to serve as a vehicle for the separate clinical analysis of individual ailments.") (emphasis added). *Accord Simms v. Schweiker,* 552 F.Supp. 415, 418 (E.D.Pa.1982).

Finally, considerations of fairness and efficiency may enter into a decision whether to remand a case to the Secretary

---

**9.** In construing the meaning of "material," we declined to endorse the stricter position taken by the Fourth and Tenth Circuits that such evidence must be reasonably likely to have resulted in a different decision by the Secretary. *Chaney,* 659 F.2d at 679 n. 4.

**10.** Although *Cutler* and *Williams* were decided prior to the 1980 amendment, their message has not been rendered obsolete. Thus, in *Chaney* we emphasized the stricter requirements for remand. We have not, however, abandoned the requirement that the Act be broadly construed. *Cf. Chaney,* 659 F.2d at 679 n. 3.

in the face of new medical evidence. Thus, in *Ferguson v. Schweiker,* 641 F.2d 243 (5th Cir.1981), this court stated: "We ... find that considerations of fairness and efficiency, together with the rule that impairments must be considered *in toto,* require the Secretary to consider all the evidence—including evidence of events occurring *after* the initial administrative hearing—in deciding the case on remand." *Id.* at 250 n. 9 (emphasis added).

With these principles in mind, we now turn to the facts before us. Since there can be little dispute that the evidence Dorsey sought to present was both new and excusably delayed (fulfilling the first and third conditions of the new standard, we consider these elements first.

█ We begin by noting that the ALJ did not explicitly find that Dorsey was mentally sound, but that the scanty evidence in the record failed to substantiate her contention that she was mentally unsound and therefore disabled. On July 9, 1980, the time of the ALJ's decision, one would have been hard-pressed to conclude otherwise. Since the onset of Dorsey's debilitating mental symptoms and her subsequent hospitalization only occurred after this date, during the pendency of the Appeals Council review, there can be little question that such evidence was "new" within the meaning of 42 U.S.C. § 405(g).

█ The Appeals Council's review, the onset symptoms, and Dorsey's hospitalization all appear to have occurred at about the same time. Dorsey was released from the hospital on August 9, 1980 at the very earliest, just two days before the Appeals Council handed down its decision. We have little difficulty finding that this limited opportunity to present the new evidence to the Appeals Council fulfills the good cause requirement for failure to incorporate the evidence in the prior proceeding under Sec-

tion 405(g). Since no more (and probably less) than three weeks passed between Dorsey's release from the hospital and the initiation of her district court action, the record indicates that she made every effort to present the new medical evidence at the earliest possible opportunity.

The Secretary urges us to affirm by arguing that even if the ALJ had considered the new evidence, he would still have denied Dorsey benefits under her current application, that is, that the new evidence is not material as that term is defined in *Chaney.* First, the Secretary contends that Dorsey is not entitled to SSI benefits because the new evidence regarding her mental condition was merely cumulative, and could not furnish a basis for a remand. The Secretary further argues that Dorsey is not entitled to Title II benefits because she has failed to demonstrate a disability between January and December of 1979.[11]

Because Dorsey's Title II and Title XVI claims for benefits in light of the new evidence are based on separate periods of eligibility, and therefore on potentially separate evidence, we now must examine these claims individually.

#### (a) *Title XVI benefits*

█ In contrast to eligibility for benefits under Title II, see part b *infra,* there is no eligibility period requirement for the receipt of SSI benefits. The regulations provide that an application for SSI benefits remains effective from the date of application to the date of final decision by the Secretary, or the date of court review, whichever is later:

Effective Filing Period of Application

§ 416.330 Filing before the first month you meet the requirements for eligibility.

---

11. These dates of eligibility for Title II benefits are significant. Prior applications for benefits by Dorsey resulted in a denial of benefits from June 21, 1977 to January 30, 1979. Those applications are not before us, and were not reopened. Therefore, to the extent that Dorsey is

entitled to benefits on her current application, her eligibility for such benefits runs from January 30, 1979. Since there is some dispute regarding the validity of the December 30, 1979 cut-off date, we discuss it further below.

If you file an application for SSI benefits before you meet all the requirements for eligibility, it will be good up until we make a final decision on your application. In addition, if you request that the final decision be reviewed by a court, and the request is made within the time limit set for requesting the review by the court, the application is good up until the time the court makes its final decision. *If you meet all the requirements for eligibility within these time periods, we can pay you from the first month that you meet all the requirements.*

20 C.F.R. § 416.330 (emphasis added). A determination of disability is clearly one of the eligibility requirements for SSI benefits. 20 C.F.R. § 416.202. Accordingly, we must consider whether there was evidence in the record at any point between July 9, 1980 (the date of the ALJ's decision) and May 17, 1982 (the date the magistrate handed down his opinion and order denying Dorsey's motion to remand) supporting the magistrate's finding that there is no new material evidence and good cause for remand.[12]

▆ A careful review of the evidence, especially the new evidence submitted after the ALJ's decision, indicates that the magistrate's opinion and order are incorrect. The new evidence, consisting of reports by Dorsey's treating physician, Dr. Lee, to the effect that Dorsey was totally disabled and at home under his care, and the report by Dr. Ruff stating that Dorsey was an alcoholic and "almost certainly had DT's [delirium tremens, or hallucinations] recently and still may have them," persuade us that there is a reasonable possibility that the Secretary's determination would have been different had this evidence been before him. As noted above, "[i]t is well settled that ... the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considera-

ble length of time, should be accorded considerable weight." *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir.1981) (citations omitted). *See also Wiggins v. Schweiker,* 679 F.2d 1387, 1389–90 (5th Cir.1982). The new medical information bears directly on Dorsey's claim of mental impairment, evidence of which was absent from the administrative proceedings. Moreover, it is clear that the ALJ did not have an opportunity to assess the cumulative or combined effect of Dorsey's impairments. Viewed in this light, we conclude that this new evidence, highly relevant to an evaluation of disability might well have led the ALJ to reach a different conclusion on Dorsey's claim. It follows that when the magistrate was presented with this new evidence, he should have remanded the matter to the Secretary for reconsideration.

The Secretary relies on *Barnard v. Secretary of Health and Human Services,* 515 F.Supp. 690, 694 (D.Md.1981), for its assertion that the new evidence, indicating a change or a worsening in Dorsey's condition, cannot serve as a basis for remand under the 1980 amendment to section 405(g) because it is cumulative of evidence already available to the ALJ. *Barnard,* however, involved a situation markedly different from the one before us. In that case, the district court found that the ALJ "had available medical reports ... [which] were reasonably contemporaneous with the disability determination." 515 F.Supp. at 694. In our case, on the other hand, the ALJ determined that Dorsey's claims of mental disability were merely unsupported by the available evidence. There was simply not sufficient evidence in the record at the time the ALJ made his determinations for him to find that Dorsey was not mentally sound. The relevant evidence on this point only became available in July and August of 1980.[13]

---

**12.** The Secretary concedes that Dorsey would be entitled to SSI benefits based on her current claim if on remand for consideration of the additional medical evidence the Secretary were to find that Dorsey was disabled in July 1980. Supplemental brief at 14.

**13.** Our case is also distinguishable from two other cases in which we refused to remand in the face of new information. In *Salinas v. Schweiker,* 662 F.2d 345 (5th Cir.1981), we declined to remand "because the [additional medical reports] are ambiguous, conclusory,

We conclude that the new evidence is not cumulative of prior evidence already in the record. We therefore remand this case to the ALJ so that he may determine on the basis of both the new and the available evidence in the record the date on which Dorsey's physical and mental impairments, singly or in combination, precluded her from engaging in substantial gainful employment. The ALJ may also receive such additional evidence as may be relevant to Dorsey's mental condition as a basis for forwarding benefits under the present application.[14]

(b) *Title II Benefits*

As mentioned earlier, the Secretary contends that Dorsey's eligibility for Title II benefits, as determined by her earnings, expired on December 31, 1979. It is clear that on July 9, 1980, the date the ALJ handed down its decision, the evidence in the record failed to substantiate Dorsey's claim that she was mentally unsound. Moreover, the only evidence of mental unsoundness which could support a finding of disability consists of Dorsey's condition after July 9, 1980. Therefore, if the Secretary's determination that Dorsey's eligibility expired on December 31, 1979, is correct, there can be no doubt that Dorsey is not entitled to Title II benefits based on her current application, because she has not demonstrated that she was under a disability between January 30, 1979 and December 31, 1979.

Our review of the record shows that there were, in effect, two determinations by an ALJ regarding Dorsey's eligibility for Title II benefits. In a decision dated January 30, 1979, the ALJ found that Dorsey met the special earnings requirements of the Act at least until September 30, 1982. However, in a subsequent decision dated July 9, 1980, the ALJ found that Dorsey last met the earnings requirements of the Act on December 31, 1979.[15]

We have found no document in the record explaining this discrepancy. During oral argument, the Secretary stated that "[the discrepancy was due to an] error on the face of the record, and may be changed by the Secretary pursuant to the regulations—it was. The correct date is December 31, 1979." The regulations governing the determination of insured status under Title II are found in 20 C.F.R. §§ 404.130 *et seq.* Ordinarily,

> [t]he findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. . . ."

42 U.S.C.A. § 405(h) (West Supp.1982). The review referred to in section 405(h) as "hereinafter provided" is that described in section 405(g) of the Act. A determination becomes the Secretary's "final decision" when the claimant either exhausts or abandons his claim. 20 C.F.R. § 404.900 *et seq.* Nonetheless, the Secretary may reopen a claim under §§ 404.987–.988 under various conditions. For example, a case may be reopened "at any time" to correct a clerical error. 20 C.F.R. § 404.988(c). Also, the Secretary may reopen for "good cause" within four years. Section 404.988. A cler-

---

and apparently unsupported by clinical data." *Id.* at 347 n. 2. *See also Allen v. Schweiker,* 642 F.2d 799, 802 (5th Cir.1981) (refusing to remand on similar grounds). Our case, of course, presents exactly the opposite situation. The evidence available to the ALJ was ambiguous and conclusory, while the new evidence is specific, consisting of clinical data and physician's and hospital reports.

**14.** Our review of the record reveals evidence of alcohol abuse in Dorsey. We have previously held that "alcoholism, alone or combined with other causes, can constitute a disability if it prevents a claimant from engaging in substantial gainful activity." *Ferguson v. Schweiker,* 641 F.2d 243, 248 (5th Cir.1981). In view of the need to consider *all* the available evidence and to give relief to the "whole person," *see* discussion *supra,* at 605–606, the ALJ on remand should consider this evidence as well.

**15.** That finding appears to have been based on the Social Security Notice of Disapproved Claim mailed to Dorsey on December 20, 1979, which stated that Dorsey met the earnings requirements until December 31, 1979.

ical error in the computation of benefits is deemed good cause. Section 404.989(a)(2). However, there can be no good cause if the only reason for reopening a claim is a change in the legal interpretation or administrative ruling upon which a decision was based. Section 404.989(b). We have not been able to ascertain from the record the reason for the Secretary's decision to change Dorsey's period of eligibility. Given our disposition of the SSI claim, we believe that the ALJ should resolve this issue and document it appropriately. This resolution would not be unduly burdensome for the ALJ, would clarify an apparent inconsistency in the record; and would be just in view of its importance to Dorsey's eligibility for Title II benefits.

## IV. Conclusion

For the reasons mentioned above, we RE-MAND this case to the Secretary for proceedings consistent with this opinion.