959 F.2d 235
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Betty M. NIEDERHAUSER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 91-3716.
 United States Court of Appeals, Sixth Circuit.
 April 10, 1992.
 
 Before NATHANIEL R. JONES, BOGGS and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff appeals summary judgment affirming the Secretary's denial of social security disability benefits. For the reasons that follow, we affirm.
 
 
 2
 * The claimant, Betty M. Niederhauser, was born on January 1, 1944 and was 45 years old at the time of the administrative hearing in this action. She is 64 inches tall and weighs 279 pounds. Niederhauser has a high school education. Until December 10, 1985, she was employed as a trim press operator. In that capacity, she lifted parts for heating units for cars out of a press and trimmed the plastic around the edges with a utility knife. She also fed scrap parts into a grinder. This work led to a repetitive-strain injury.
 
 
 3
 On December 13, 1985, Niederhauser underwent surgery to release the carpal tunnel nerve in her right hand. A few months later, she began to experience night waking and numbness in her fingers. Dr. Philip D. Latham directed that Niederhauser remain home from work for an additional four weeks. In April 1986, she underwent additional surgery for carpal tunnel syndrome of the right hand. In January 1987, Dr. Latham stated that Niederhauser was still having problems related to carpal tunnel syndrome and indicated that she was "permanently disabled" from her previous occupation "but would perhaps be able to manage a lighter type of job." J.A. at 134. He then referred her to Dr. M.C. Lai for consultation.
 
 
 4
 Dr. Lai examined Niederhauser and formed an opinion that she experienced causalgia of the right hand and chronic myofascial syndrome with pain of the right forearm at the volar aspect. He noted no limitation of range of motion in the upper and lower extremities except the right wrist. Niederhauser's sitting and standing balances were good, with normal function and no limping on ambulation. He recommended physical therapy and acupuncture for the wrist problem.
 
 
 5
 Nerve conduction studies taken on April 8, 1987 were normal. Dr. Lai's office notes record a continuing problem with the right wrist, but no problems involving Niederhauser's legs or ankles. He noted that he was unable to judge the amount of pain felt by Niederhauser due to an inconsistency in her complaints of tenderness or pain in specific locations. She was released from treatment by Dr. Lai, and at that time, he indicated that he did not feel that "she is going to be disabled for everything." Id. at 143.
 
 
 6
 On November 2, 1987, Niederhauser filed an application for a period of disability and disability insurance benefits with the Secretary of Health and Human Services, alleging that she became disabled on December 10, 1985 due to carpal tunnel syndrome. On December 14, 1987, Dr. Michael K. Riethmiller diagnosed her with reflex sympathetic dystrophy and indicated that she could not return to her past duties as a press operator.
 
 
 7
 On December 24, 1987, Dr. Richard T. Beers performed a residual functional capacity assessment on Niederhauser and found no limitations that would prevent her employment in a position involving medium-exertion level work. Dr. Beers' review was a "paper review"--that is, he reviewed Niederhauser's records but did not personally examine her--performed for the Bureau of Disability Determination. Dr. John Heffelfinger agreed with that assessment on March 29, 1988, after performing an assessment (paper review) of his own.
 
 
 8
 On December 28, 1988, Niederhauser presented herself to the Wyandot Memorial Hospital Emergency Room for an injury she sustained when she slipped on her porch and twisted her knee. X-rays revealed small spurs on the patella of her right knee and heel, as well as a bony fragment indicating a prior fracture, but "[n]o evidence of recent fracture or dislocation." Id. at 175.
 
 
 9
 Niederhauser continued to experience pain in the knee and, on April 24, 1989, approximately three weeks prior to the hearing, saw Dr. Donald Smith. Dr. Smith suspected arthritis of the right knee and referred her to Dr. Theodore F. Ebner, an orthopedic specialist. Niederhauser was unable to obtain Dr. Smith's notes, however, in time for the administrative hearing. Furthermore, Dr. Ebner was unable to examine Niederhauser until June 3, 1989, twenty-three days after the hearing and four days after the ALJ's decision. In any event, at that time, Dr. Ebner found that her range of motion was "near full." Id. at 176.
 
 
 10
 On May 12, 1989, Niederhauser appeared with counsel and testified and presented expert testimony at an administrative hearing before an administrative law judge ("ALJ"). At the hearing, Niederhauser indicated that she could cook, run the sweeper with her left hand, wash dishes, and do laundry if someone else carries the clothes downstairs. She could sew with some difficulty, grocery shop, and make the bed. She went out frequently with her mother and sister-in-law.
 
 
 11
 Dr. Patricia Wongsam testified as medical advisor at the hearing. She reviewed the medical records and determined that Niederhauser had causalgia of the right hand. She noted that the carpal tunnel problem had been resolved. This opinion was based upon Dr. Lai's report. Dr. Wongsam noted the heel and patella spur as well as the bony fragment indicating a prior fracture, but stated that there had been no definite diagnosis as to the impact of these problems upon Niederhauser. Dr. Wongsam found no indication that the knee or ankle problems were chronic or disabling. She acknowledged that Niederhauser's testimony provided evidence of the required level of obesity, but indicated that there appeared to be no functional limitations caused by this problem.
 
 
 12
 Dr. Wongsam believed that the wrist condition would limit Niederhauser's ability to use her hand for forceful and repetitive activities and would cause her some problems with lifting. She could only lift ten to fifteen pounds. Fine manipulative activities with the right hand would also be a problem. She could shuffle papers, write a few sentences, carry light objects, and make change.
 
 
 13
 When asked to assume that the weight and knee problems were significant, Dr. Wongsam indicated that Niederhauser would have problems standing, walking, and climbing. These activities would be limited to one hour at a time for up to four hours per day. Stooping and squatting could be done only occasionally. There would be no other restrictions. Dr. Wongsam believed, however, based upon the records and the testimony, that none of Niederhauser's impairments met or equalled any section of the listing of impairments in the social security regulations. In fact, the x-rays of her right knee and ankle did not support a serious arthritic condition or one that would last twelve months or longer. As such, there would be no limitation on walking or standing once the knee and ankle problems were resolved.
 
 
 14
 Anthony C. Riccio, a vocational expert, indicated that, based upon Dr. Wongsam's testimony, Niederhauser could not return to her past employment. Riccio was asked to assume the existence of a person with the same age, education, and work experience as Niederhauser, who was capable of performing sedentary work. He was also asked to assume that the person had restrictions against (1) forceful, powerful gripping with the right hand, (2) any repetitive movements of the right upper extremity, (3) continuous manipulative activity such as making change, and (4) walking and standing for more than one hour at a time and for more than four hours during an eight-hour day. Assuming these facts, Riccio testified that the individual would qualify for ten jobs or less in the relevant geographic work area. Removing the fourth limitation with respect to walking and standing, Riccio testified that the individual would qualify for 4,500 to 5,500 jobs, including a night watchman, custodian, construction crew flagworker, restaurant hostess, and department store or food store greeter.
 
 
 15
 On May 30, 1989, the ALJ rendered a decision denying Niederhauser's application, finding that Niederhauser was not disabled because a number of jobs in the national economy accommodated her residual functional capacity and vocational profile. On December 11, 1989, the ALJ's decision became the final decision of the Secretary when the appeals council denied Niederhauser's request for review.
 
 
 16
 Pursuant to 42 U.S.C. § 405(g) (1988), Niederhauser initiated this civil action for judicial review of the Secretary's final decision. The case was referred to a magistrate. Niederhauser filed a motion to remand to the Secretary for the consideration of new and material medical evidence. Both parties then moved for summary judgment.
 
 
 17
 On February 11, 1991, the magistrate filed a report and recommendation that Niederhauser's motion to remand be denied and that the Secretary's motion for summary judgment be granted. On July 11, 1991, the district court issued a memorandum and order adopting the magistrate's report and recommendation. Niederhauser now brings this appeal.
 
 II
 
 18
 Niederhauser challenges the ALJ's decision, the appeals council's affirmance, and the district court's affirmance. We address each of her challenges in order.
 
 
 19
 * Niederhauser contends first that the decision of the Secretary was not supported by substantial evidence. An ALJ's findings may be overturned only if there is no substantial evidence supporting his or her conclusions. Kirk v. Secretary of HHS, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). Substantial evidence is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.
 
 
 20
 The Secretary evaluates disability claims under a five-step analysis. 20 C.F.R. § 404.1520 (1991). First, if the claimant is working, there will be a finding of no disability. Id. § 404.1520(b). Second, the claimant must have a severe impairment to be considered disabled. Id. § 404.1520(c). Third, if the claimant has an impairment that meets the duration requirement and is listed in appendix 1 to the regulations, there will be a finding of disability. Id. § 404.1520(d). The duration requirement is twelve months. Id. § 404.1509. Fourth, the impairment must prevent the claimant from performing past relevant work. Id. § 404.1520(e). Finally, the claimant must be unable to perform other work, taking into account the claimant's residual functional capacity, age, education, and past work experience. Id. § 404.1520(f).
 
 
 21
 Niederhauser specifically contends that she presented evidence adequate to show that she meets the definition of disability of 20 C.F.R. § 404.1520(d), thus satisfying the third step of the five-step analysis. Assuming that she meets the definition of obesity, see id. § 404 subpt. P, app. 1, § 10.10, tbl. II, Niederhauser need only establish that she has a "[h]istory of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine." Id. § 404 subpt. P, app. 1, § 10.10(A). The record is clear, however, that she did not establish this condition at the hearing. See, e.g., J.A. at 74 ("There is no ... medical documentation that she has persistent, significant arthritis in her joints at all."). Although Niederhauser may be currently able to demonstrate that she meets the definition of disability, she was not able to do so at the hearing; accordingly, the decision of the Secretary was supported by the evidence available at the hearing.
 
 B
 
 22
 Niederhauser contends that the appeals council erred in failing to consider her new medical information. "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b).
 
 
 23
 Dr. Smith's notes clearly related to his examination of Niederhauser three weeks before the hearing. Dr. Ebner's examination also related, arguably, to the period prior to the hearing, because Dr. Ebner's examination was on referral from Dr. Smith. Accordingly, the appeals council was obligated to consider the evidence.
 
 
 24
 The record reveals that the appeals council did consider the new evidence. Upon consideration, however, the council reasoned as follows:
 
 
 25
 Your representative contends that your impairment meets the requirements of section 10.10A of Appendix 1, Subpart P of Regulations No. 4. Dr. Ebner, however, reports that there is a full range of motion of your right knee. Section 10.10A requires a history of pain and limitation of motion in a weight bearing joint.
 
 
 26
 J.A. at 5. Thus, the appeals council denied Niederhauser's request for review, because Dr. Ebner purportedly reported a full range of motion, while the regulations require limitation of range of motion. This finding is, however, somewhat inaccurate. Dr. Ebner found that Niederhauser's range of motion was "near full." Id. at 176. "Near" certainly seems to imply some limitation. Nonetheless, it appears that Dr. Smith noted a full range of motion. Id. at 174. Combining his opinion with the ambiguity inherent in the phrase "near full," we have no basis upon which to overrule the appeals council for lack of substantial evidence.
 
 C
 
 27
 Niederhauser contends finally that the district court erred in failing to remand for reconsideration. A reviewing court may order additional, material evidence to be taken before the Secretary if good cause exists for the failure to present the evidence in a prior proceeding. Willis v. Secretary of HHS, 727 F.2d 551, 553 (6th Cir.1984). New evidence created after the hearing does not satisfy the good-cause requirement. Oliver v. Secretary of HHS, 804 F.2d 964, 966 (6th Cir.1986).
 
 
 28
 As noted previously, Niederhauser, at the time of the hearing, did not have Dr. Smith's notes. Those notes indicate that Niederhauser had been experiencing pain in her right knee for two years and currently had arthritis in that knee. J.A. at 174. Upon referral from Dr. Smith, Dr. Ebner took x-rays of Niederhauser's knee, id. at 176, and confirmed that she had "moderately severe osteoarthritis of the right knee" that may eventually require surgery, id. at 177.
 
 
 29
 The district court found that Niederhauser could not demonstrate good cause for her failure to produce this information at the hearing; thus, it refused to remand for further proceedings before the Secretary. This finding is certainly in accordance with the state of the law in our circuit. See Oliver, 804 F.2d at 966. Contrary to the position of the Fifth Circuit as expressed in Dorsey v. Heckler, 702 F.2d 597, 604-06 (5th Cir.1983),[1] in the Sixth Circuit, the rule is that the claimant must articulate a reason for failure to produce sufficient evidence at the hearing. Niederhauser was under an affirmative duty to obtain all examinations necessary to justify her claim. Because Niederhauser failed to demonstrate good cause for her failure to meet her burden, the district court did not err in refusing to remand her case.
 
 III
 
 30
 For the foregoing reasons, the district court's judgment, affirming the Secretary's denial of social security disability benefits, is AFFIRMED.
 
 
 
 [1]
 In Johnson v. Heckler, 767 F.2d 180 (5th Cir.1985), the Fifth Circuit disavowed Dorsey to the extent Dorsey implied that remand was appropriate for evidence of a post-hearing deterioration of a condition. Id. at 183. Johnson does not appear, however, to call into question Dorsey's otherwise more lenient standard for what constitutes good cause. Id. at 183