**William COOPER, Plaintiff,**

v.

**Otis R. BOWEN, Secretary, of Health and Human Services, Defendant.**

**Civ. A. No. 3–88–1668–H.**

United States District Court,
N.D. Texas,
Dallas Division.

March 1, 1989.

Donald W. Jenkins, Legal Services of North Texas, Dallas, Tex., for plaintiff.

Stafford Hutchinson, Asst. U.S. Atty., Dallas, Tex., for defendant.

## ORDER

SANDERS, District Judge.

The Court has made the required independent review of the Findings, Conclusions and Recommendation of the United States Magistrate, filed February 13, 1989, and the Findings and Conclusions are ADOPTED as the Findings and Conclusions of the Court. Judgment will be entered accordingly.

SO ORDERED.

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE

JOHN B. TOLLE, United States Magistrate.

Pursuant to 28 U.S.C. § 636(b), and the Court's February 18, 1988 Order, this action was referred to the United States Magistrate for recommendation and report. Before the Court are Plaintiff's Motion for Summary Judgment, filed October 21, 1988, and Defendant's Motion for Summary Judgment, filed October 19, 1988.

## PROCEDURAL BACKGROUND

Plaintiff filed for disability benefits on November 10, 1986, alleging disability from April, 1985 due to weakness in his neck, shoulders, and legs, hypertension, and cramps in his hands and feet. Transcript at 61–68 (hereafter "Tr. ____.") This application was denied initially and on reconsideration. Tr. 75, 78. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on October 6, 1987. Tr. 29. The ALJ issued a decision denying benefits on December 22, 1987. Tr. 12–20. The Appeals Council refused to review the ALJ's decision. Tr. 3–4. The decision of the ALJ thus became the final decision of the Secretary. Plaintiff then brought a timely appeal to the district court, pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Plaintiff, a sixty-two year old homeless person, Tr. 33, 66, has a tenth grade education and difficulty reading. Tr. 46. His previous work included heavy labor and lighter custodial work. Tr. 39. Plaintiff alleges he suffers from a wide range of ailments, including (1) prostatic hypertrophy, chronic pulmonary insufficiency, a de-

viated nasal septum, alcoholism, high blood pressure, atypical personality disorder, incontinence, and osteoarthritis. Tr. 141, 145, 148, 138, 160. Plaintiff's previous work, in 1985, consisted of sweeping and carrying cardboard. Tr. 39.

## DISCUSSION

The only issue before the Court on judicial review under 42 U.S.C. § 405(g) is whether there is substantial evidence in the entire record to support the Secretary's decision to deny Plaintiff's application for benefits. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir.1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Dorsey v. Heckler*, 702 F.2d 597, 605 (5th Cir.1983). The record contains substantial evidence to support the Secretary's findings if there "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Anderson v. Schweiker*, 651 F.2d 306, 308 (5th Cir.1981).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence for four reasons: (1) the ALJ did not properly consider Plaintiff's alcoholism; (2) the ALJ improperly discounted the opinion of Plaintiff's treating physician; (3) the ALJ failed to consider the effect of Plaintiff's respiratory impairment; and (4) the ALJ did not consider the effects of Plaintiff's psychiatric impairment.

With respect to the claim of alcoholism as a disability, the consulting psychiatrist found that Plaintiff had an alcohol dependency. Tr. 145. Plaintiff also testified that he drank alcohol. Tr. 48. A social worker

familiar with Plaintiff, Terry Paul, testified that Plaintiff was a periodic drinker. Tr. 54. The ALJ found that Plaintiff's alcoholism did not restrict his daily activities. Tr. 18.

"[A]lcoholism, alone or combined with other causes, can constitute a disability if it prevents a claimant from engaging in substantial gainful activity." *Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir.1985) quoting *Ferguson v. Schweiker*, 641 F.2d 243, 241 (5th Cir.1981) (note and citations omitted.) Once a claimant's alcoholism is established, as it was here by the testimony of Paul, Plaintiff, and the psychiatric report, the question becomes whether the claimant can control the use of alcohol voluntarily. *Ferguson v. Schweiker*, 641 F.2d at 248–249.

■ The ALJ made no specific findings which indicate why he found Plaintiff's alcoholism not to be disabling. The ALJ cited no evidence to support his conclusion.[1] In light of the complete lack of medical evidence on Plaintiff's ability to control his drinking, and that the only evidence is that Plaintiff is currently suffering from alcoholism and has not successfully given up drinking, there is not substantial evidence to support the ALJ's conclusion that Plaintiff's alcoholism is not disabling. *Ferguson v. Schweiker*, 641 F.2d at 249.

■ Plaintiff's second ground for review is his contention that the ALJ did not give sufficient weight to the opinion of his treating physician. Plaintiff's treating physician, Dr. Erin Boh,[2] submitted an evalua-

---

**1.** In *Neal v. Bowen*, 829 F.2d 528 (5th Cir.1987), on which the Secretary relies, there was evidence that the claimant had never suffered blackouts, shakes, or any other symptom of alcohol abuse, drank only after work, had been able to control his disease with the help of medication, and had decreased his drinking after being advised to do so by his doctor. 829 F.2d at 531–32. The Fifth Circuit found this was sufficient evidence to support the ALJ's finding that Neal's alcoholism was controllable.

The ALJ in this case did ask Plaintiff if he could stop if told to do so for health reasons, to which Plaintiff responded "I make—I think I'd make a decision to stop if somebody was telling me that, that I had to." ALJ: "You think you'd

—you'd stop then?" Plaintiff: "I think I'd try." Tr. 48–49. This is not evidence which supports the ALJ's decision since "a finding that an individual is not disabled by alcoholism cannot rest solely on the testimony of the individual himself...." *Ferguson v. Schweiker*, 641 F.2d at 249. Here the only evidence concerning Plaintiff's alcoholism is Plaintiff's testimony and the testimony of a social worker that Plaintiff had periodic binges. Tr. 54.

**2.** The ALJ's opinion states, somewhat cryptically, that Dr. Boh "is not listed in the available directory of physicians." Tr. 17. This comment, which Plaintiff interprets as an implication that Dr. Boh is not a qualified physician, see Plaintiff's Motion for Summary Judgment,

tion of Plaintiff's physical capacity. Tr. 159–163. Dr. Boh reported that Plaintiff "is unable to raise right shoulder to any significant degree," could never lift more than ten pounds, could never bend, squat, kneel, crawl, or reach above his shoulder, or sit or stand for long periods of time. Tr. 159–163. The ALJ gave little weight to Dr. Boh's report, however, finding it was not consistent with the reports by doctors in exhibits 16, 17, and 18[3] (Tr. 143–146, 147–148, 149–153).

 "Unless there is good cause to the contrary the testimony of the treating physician must be accorded substantial weight." *Fruge v. Harris,* 631 F.2d 1244, 1246 (5th Cir.1980). The rationale of the rule is clear: the greater familiarity of the treating physician with the patient's injuries, cause of treatment, and responses over time logically entitles his or her opinion to greater weight than "that of a one-shot" consulting physician. *Smith v. Schweiker,* 646 F.2d 1075, 1081 (5th Cir. 1981). While the ALJ has explained why he chose to discount the opinion of the treating physician, Dr. Boh, it is apparent that none of the reasons given by the ALJ can support his conclusion.

The ALJ's reliance on Exhibit 16, a psychiatric report, is misplaced. Nothing in that report is relevant to Plaintiff's *physical* condition. There is no mention of any findings by Dr. DeFord on Plaintiff's physical condition, much less any objective medical evidence upon which such findings might be based. Moreover, there is nothing in the record to indicate that Dr. DeFord, a psychiatrist, is qualified to evaluate the types of physical injuries claimed by

Plaintiff. As Dr. DeFord's report has nothing to do with Plaintiff's physical condition, it does not contradict Dr. Boh's report and cannot be a basis for rejecting Dr. Boh's findings.

Exhibit 18, a pulmonary review, is also not inconsistent with Dr. Boh's report. Dr. Boh stated "Plaintiff has a significant chronic obstructive pulmonary disease and past [history] of tuberculosis, both of which restrict Mr. Cooper's activities." Tr. 160. The pulmonary review found that Plaintiff had significantly less pulmonary function than a healthy individual. For example, the vital capacity measurement was on sixty-eight percent of the predicted capacity, the forced expiratory volume (1.0 second) was fifty-nine percent of the predicted capacity, and the other measurements ranged from thirty-nine percent to forty-nine percent of predicted capacity. Tr. 151. While these results[4] are not sufficient to establish by themselves that Plaintiff is disabled, see 20 C.F.R. Part 404, Subpt. P, App. 1, § 3.02 (1988), they do not contradict Dr. Boh's findings.[5]

The only medical evidence which is inconsistent with Dr. Boh's report is the report of Dr. Jabez Galt's consultative examination of Plaintiff. Exhibit 17. Tr. 147–148. The basis for Dr. Galt's conclusion that Plaintiff's ability to use his arms is normal is that Dr. Galt "had him [Plaintiff] pick up a pen and write his name, I watched him unbutton his clothes to undress and I saw him step onto a fairly high step to get on to the table. Extensive body motions were required for undressing and these were all normal." Tr. 148. This is not objective medical evidence. There is no mention in

---

at ——, deserves no weight in evaluating Dr. Boh's opinion. Not only is there no indication what the "available directory of physicians" is or what information it might contain, it is not in evidence. If the statement is intended to imply that Dr. Boh is not a licensed physician, or is in some respect unqualified, it should be supported by evidence in the record. (There is also nothing in the record which indicates that listing in this unnamed directory is evidence of a physician's license status or other qualifications).

**3.** Exhibit 16 is a report by a consulting psychiatrist, Dr. Horace DeFord. Exhibit 17 is a report

by a consulting physician, Dr. Jabez Galt. Exhibit 18 is a report of a consultative pulmonary function review.

**4.** As described below, see page 9, the test did not comply with Social Security Administration rules for evaluating pulmonary capacity.

**5.** The ALJ's basing of his credibility choices on a misinterpretation of the medical evidence in Exhibits 16 and 18 is a further factor requiring reversal and remand. See *Olson v. Schweiker,* 663 F.2d 593, 596 (5th Cir.1981).

Dr. Galt's two page letter of any objective medical tests which were performed by him to determine Plaintiff's physical abilities. Simply being able to undress or hold a pen is not the standard by which disability is judged.

The ALJ also found that Dr. Boh's statement that Plaintiff could only sit for two hours, stand for one hour, and walk for one hour was "absurd" in light of Plaintiff's testimony that he spends his days walking the streets. Tr. 17. Plaintiff's activities are, of course, due to the fact that he is homeless and must spend his time on the street. Tr. 35–36.

■ To find a homeless person is not disabled because circumstances deny him a place where he can rest during the day would deny the reality of the life of the homeless. "Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637 F.2d 968, 971 (3rd Cir.1981). Nor does disability require that a claimant have a dark room in which to vegetate. Plaintiff spends his days on the street because he has no home. He cannot spend the day lying down or resting as he might if he had a home.[6] Moreover, the activities of a homeless person such as Plaintiff are not proof of the ability to perform light work.[7]

■ Plaintiff's third ground of error, that the ALJ did not properly evaluate Plaintiff's respiratory impairment, is also correct. The ALJ relied on Dr. DeFord's report that Plaintiff smoked a pack of "Bugler" cigarettes daily, Tr. 143, as evidence

that he can tolerate a "a moderate amount of industrial or environmental pollutants."[8] Tr. 17. There is no medical evidence in the record that an unemployed person's ability to smoke cigarettes demonstrates the ability to work in an environment with a constant level of pollution. A smoker who feels short of breath may, for example, stop smoking until he recovers. A worker in a factory cannot simply leave his job whenever he feels short of breath. Plaintiff may be able to tolerate cigarette smoke while he sits or walks but not while exerting himself. There is simply no evidence on this point and thus the ALJ's conclusion is not substantial evidence to support his decision.

Moreover, as the Secretary's brief notes, the pulmonary function report did not, as required by the regulations when the results are less than 80% of predicted normal values and the use of bronchodilators is not contraindicated, contain values for the tests after the admission of a bronchodilator. See 20 C.F.R. Part 404, Subpt. P, App. 1, § 3.00(D) (1988). This further detracts from the ALJ's reliance on this test and demonstrates that the respiratory ailment was not properly evaluated.[9]

Plaintiff's final claim is that the ALJ failed to properly consider his claim of mental impairment. Because the findings made with respect to the other claims, it is not necessary to reach the merits of this claim. However it must be said that the record is not at all clear on why the consulting psychiatrist's finding of "Atypical Personality Disorder 301.89," Tr. 145, was not considered disabling. Although the

---

6. Plaintiff testified that he was not allowed in the shelter during the day. Tr. 36.

 If Plaintiff were to attempt to rest on the street he would be in violation of Dallas city ordinances. See § 43–1 "Obstructing Streets and Sidewalks," Dallas Municipal Code.

7. Plaintiff testified that he lives at a shelter for the homeless, that he leaves the shelter in the mornings and goes to the "stewpot" at the Presbyterian Church for the morning, where he gets some food and sits around, and "walks the streets" until he returns to the shelter at night. Tr. 35–36. Of course, walking the street does not indicate that Plaintiff actually walks all day but that he spends the day on the street. There

is no evidence that this activity is similar to light work.

8. The ALJ's statement that Plaintiff smokes "a full package of 'Bugler' everyday" is contradicted by Plaintiff's testimony that he goes four or five days without smoking because he cannot tolerate the smoke. Tr. 45. The ALJ does not explain why he found Dr. DeFord's report of Plaintiff's habit more credible than Plaintiff's direct testimony.

9. The remedy for this deficiency in the test results is, of course, for the Secretary to secure a test which does comply with the regulations on remand.

ALJ's opinion refers to the preparation of "Psychiatric Review Technique form" and two such forms are included in the record, Tr. 83–91, 92–101, it is unclear what these forms are based upon. There is no evidence that the persons [10] who completed the forms saw Plaintiff, and it appears that they simply reviewed Dr. DeFord's three page letter. Without more detailed findings concerning this evidence, it cannot be said that the decision of the ALJ is supported by substantial evidence.

## RECOMMENDATION

For the reasons stated above, I recommend that the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Judgment be denied, and this action be remanded to the Secretary for further proceedings including, but not limited to, evaluation of Plaintiff's alcoholism, respiratory condition, and arthritis. It appears that additional medical evidence on these points will be necessary.

---

**10.** Although "Professional Qualification" sheets precede both "technique" forms, Tr. 82, 92, the signatures on the "technique" forms are illegible and do not appear to match the names on the "qualification" forms. A more detailed discussion of the basis for the conclusions made on the "technique" forms, and identification of their authors, might provide substantial evidence for a finding of no psychiatric disability. In its present state the record does not provide such support.