**Jack E. OLSON, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary, Department of Health and Human Services, Defendant-Appellee.**

**No. 81–1188**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 11, 1981.

---

Stephen L. Olson, Oklahoma City, Okl., for plaintiff-appellant.

Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., for defendant-appellee.

Before GEE, GARZA and TATE, Circuit Judges.

GARZA, Circuit Judge.

In October 1978, Jack Olson filed an application for disability insurance benefits with the Social Security Administration on the basis of a condition which he claimed had prevented him from working since August 30, 1975. The shoulder, hip, ankle, and neck problems of which the claimant complained, a condition known as osteoarthritis, prohibited him from engaging in any type of gainful employment. Medical reports also indicated claimant suffered from ulcers and gout. After this application was de-

nied, claimant requested a hearing on his claim. This hearing was conducted before an Administrative Law Judge (ALJ) on September 18, 1979.[1] The ALJ denied disability benefits on two grounds. With regard to the majority of the medical evidence which was dated before claimant's previous benefit denial, the ALJ held this testimony to be merely cumulative of the evidence submitted in the earlier case. For this reason, he ruled claimant had not presented the new and material evidence required to warrant reopening that decision.[2] The evidence of disability after that date was considered in a different light. This evidence was examined independently to determine whether claimant's condition in the years of 1978 and 1979 was of such severity that he was disabled and unable to engage in any employment. On this second issue, the ALJ found claimant had failed to prove that he was disabled. While acknowledging that claimant suffered periodic attacks of arthritis, he found that claimant had the residual capacity to work at a sedentary job. Claimant sought judicial review of the benefit denial in federal district court. After considering both parties' motion for summary judgment, the district judge affirmed the decision of the Secretary. It is from this decision that claimant appeals.

Plaintiff traces his physical problems back to injuries sustained in World War II. These injuries resulted in a condition which the Veterans Administration (VA) judged to warrant a 40% disability rating. Upon discharge in 1945, he was granted service-connected disability payments. He voluntarily renounced these payments in 1955, when he advised the Veterans Administration that he was financially able to care for himself. Plaintiff has engaged in a variety of occupations since that time but his primary expertise is in the fields of automobile and real estate sales. He was employed by a Ford dealership at the time his serious medical problems began. He worked sporadically from 1972 to 1975, but has been unable to work at all since that time.

The only question before this court is whether the findings of the Secretary, as to any facts, are supported by the substantial evidence. In a case such as this, where appeal is taken from a summary judgment determination in favor of the Secretary, the review function of the circuit court is akin to that of a district court. Review must be made independently and without the assumption that the district court acted correctly. *McDaniel v. Harris*, 639 F.2d 1386, 1388 (5th Cir. 1981). However, as to review of the decision of the ALJ, it is not the function of this court to try the case de novo or reweigh the evidence. Instead, we are limited to determining whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gaultney v. Weinberger*, 505 F.2d 943, 945 (5th Cir. 1974), *quoting Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1970):

> (c) The administrative law judge decides that there is cause to dismiss a hearing request entirely or to refuse to consider any one or more of the issues because—
>
> (1) The doctrine of *res judicata* applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action;
>
> 20 C.F.R. § 404.957.
>
> Under the provisions of 20 C.F.R. §§ 404.988–989, a determination of the Secretary may be reopened within four years of the date of initial determination if new and material evidence is furnished.

1. This was not the first time claimant had sought disability insurance benefits. His first application was filed in January, 1975, and alleged inability to work beginning October, 1974. This application was denied on initial determination. He filed a second application in July, 1976, and alleged inability to work beginning August 30, 1975. This application ended in a hearing denial decision issued February 28, 1977. The decision of the ALJ was affirmed by the Appeals Council.

2. The applicable social security regulation provides, in relevant part, as follows:

   An administrative law judge may dismiss a request for a hearing under any of the following conditions:

It is axiomatic that the burden rests on claimant to prove that he suffers from a disability as defined by the Social Security Act, 42 U.S.C. § 423. Disability is defined by the statute as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). It is not enough that claimant simply be unable to perform the type of work in which he was previously engaged. He must demonstrate that he is unable to perform any type of gainful employment available in the national economy. The inquiry is not whether claimant is able to *obtain* work but whether he is able to *engage* in any vocation. *Brown v. Finch*, 429 F.2d 80 (5th Cir. 1970).

Much of the testimony which was given at the hearing on the most recent application by claimant was in fact information which had been considered when his previous two applications were processed. There is no reason, therefore, to delve into this information. However, there was also some new testimony given at the hearing before the ALJ and it is this information that must be the subject of our consideration.

One occurrence on which claimant places high importance is the revocation of his driver's license for medical reasons which occurred in 1978. This action came about after claimant went to a Department of Public Safety (DPS) station to change the address on his driver's license. He was spotted by a DPS officer who requested that he produce his driver's license. Subsequently, he received notification that his driver's license had been suspended and a temporary license issued. The Texas Department of Health then determined that claimant was physically unable to safely operate an automobile and Judge George A. Patzig revoked his license. The ALJ did consider the driver's license revocation in his decision, but did not consider it important because he found there were many jobs for which claimant was qualified which did not require him to drive an automobile. It is the view of this Court, however, that the claimant must have been suffering badly for the DPS officer to have noticed him initially. This fact is not mentioned by the ALJ.

It is settled law that pain itself may be enough to justify an award of disability benefits, whether or not the pain can be medically documented by symptoms. *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979). In holding that claimant is not disabled and has the residual capacity for sustained work activity, the ALJ stresses that one V.A. report which claimant submitted which indicated that he was not on narcotics "would contraindicate the existence of severe pain." However, this finding overlooks the medical report of Dr. Bragg dated February 22, 1979, which states, in relevant part, "The patient is sensitive to all medications except Tylenol. The patient is allergic to Morphine, Demerol, Codeine, and Penicillin." This court recently stated, in *Scharlow v. Schweiker*, 655 F.2d 645 (5th Cir. 1981), that failure of the ALJ to make credibility findings about claimant's allegations of pain required reversal and remand of the cause. It follows that a credibility choice based on misinterpretation of medical records mandates identical action.

Based on similarly shaky terrain is the ALJ's finding that there are many jobs for which claimant is still qualified. It is clear that an ALJ may take administrative notice that certain jobs of a sedentary nature exist in the national economy and that claimant must be given a chance to rebut the claim that he is qualified for employment. In this case, claimant presented his own personal testimony as well as that of family members and a neighbor in regard to the severity of his condition and his inability to work and perform a variety of tasks. Additionally, his osteoarthritic condition was verified by a number of doctors' reports. The ALJ even found in his opinion that the claimant was susceptible to periodic attacks of severe arthritis. A vocational

expert under contract to the Social Security Administration to testify in such cases, declared that an individual who "periodically missed work, had arthritis attacks, was not able to consistently be on the job, would not qualify for the jobs that I have mentioned." The ALJ's assertion about the many jobs for which claimant was qualified appears to be clearly refuted by the testimony of an expert who in fact is paid by the government. As this court recently held in *Rodriguez v. Schweiker*, 640 F.2d 682 (5th Cir. 1981), "Once a claimant has met his burden, an ALJ may not suggest narrow areas of possible employment and assert that the claimant can perform them without some support in the record, either through medical testimony or reports or some type of vocational testimony." 640 F.2d 686. The one assessment of residual functional capacity, made by Dr. Bragg in February, 1979, indicated that claimant could stand and walk for only one hour and sit for one hour in an eight-hour workday.[3] The severity of the condition led Dr. Bragg to note in the margin of his report that claimant was unable to work. The ALJ includes Dr. Bragg's conclusions in his opinion but appears to ignore them when he makes his findings. The V.A. reports which are obviously the basis for the ALJ's benefit denial do not examine the residual capacity of the claimant.[4] It is clear, therefore, that the relevant medical and witness testimony presented by the claimant overwhelmingly support his claim of disability.

It is true that this is not the first time claimant has sought disability benefits. However, although he is legally bound by the results of the first two decisions for the time period involved, he should not be penalized in his present application for his past denials. After all, he was not represented by counsel in the first two instances and so possibly was unable to fully present his testimony and effectively undertake the appeal process.

Claimant suffers from a condition that is not constant. He testified that some days he will feel fairly well, while the next day he may be in severe pain. It appears from the opinion of the ALJ that the inconstant nature of the condition troubled him. Although the medical testimony presented clearly showed a case of osteoarthritis, claimant here is being penalized for the fact that he is not in severe pain every day. However, the regulations which govern the disbursement of disability benefits only require that plaintiff be disabled to the point of being unable to perform any gainful employment. As the vocational expert testified, an individual who is forced to miss many days from work will not qualify for any full-time job. We must recognize that the definition of a disability is not limited to cases where the sufferer is in intense pain every day. The nature of some disabilities dictates that there will be some good days but a very large number of excruciatingly bad days. Claimant in this case is allergic to narcotic medications and therefore these bad days are clearly very painful periods. The testimony of family, friend, and physician confirms the severe disability from which he suffers.

Claimant has also been penalized, it appears, for participating in his own hearing. The record indicates that claimant had taken Cortisone, to which he is allergic, for a period of time before the hearing just so he would be able to participate. After disobeying doctor's orders so that he could present his case, the ALJ found that a further sign of his lack of disability was the fact that he "did not exhibit any clinical signs of arthritis, and actively participated in the hearing, which lasted over two hours, without apparent difficulty."

---

**3.** The only other assessment of residual capacity function, made by a doctor whose signature is illegible, was not mentioned in the ALJ's opinion and therefore is not considered here.

**4.** It is ironic that the ALJ relies on V.A. medical reports for his conclusion that claimant is not disabled while at the same time he gives very

little weight to the V.A.'s recent increase in claimant's service connected disability rating from 40% to 70%. Although the V.A.'s disability rating is not binding on the Secretary of Health and Human Services, it is evidence that should be given great weight. *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981).

**598**

Based on the evidence which, contrary to the ALJ's opinion, indicates claimant is disabled and that there is no gainful work existing in the economy which he can do, we find that the Secretary's decision is not supported by substantial evidence.

REVERSED and REMANDED.