**Louis H. KIESER Plaintiff,**

v.

**Jo Anne BARNHART, Commissioner of the Social Security Administration, Defendant.**

**No. 6:01CV–236–ORL–19JGG.**

United States District Court,
M.D. Florida,
Orlando Division.

March 8, 2002.

Shea A. Fugate, Law Office of Shea A. Fugate, Orlando, FL, James Wilson Keeter, Morgan Colling & Gilbert, Orlando, FL, for plaintiff.

Susan Roark Waldron, Assistant United States Attorney, Tampa, FL, for defendant.

## ORDER

FAWSETT, District Judge.

This case comes before the Court upon the following matter:

(1) Report and Recommendation (Doc. No. 12).

## BACKGROUND

On December 17, 1998, Plaintiff filed a claim for disability benefits, claiming disability as of March 14, 1997.(R. 68–71). Kieser was 41 years old on the date he filed for a period of disability.(R.69). He completed the eleventh grade, obtained a GED, and received vocational training in welding, gas free engineering, and fire fighting while in the United States Coast Guard from 1979–1997. (R.25). He has past relevant work experience performing ship and shore maintenance, construction, welding, plumbing, and carpentry in the Coast Guard. (R. 25–26, 75). His primary occupation while in the Coast Guard was that of a damage controlman.(R. 26, 87–88). Kieser's alleged disability is based on an August 1993 neck injury—a broken neck-cervical fracture—sustained in a diving accident.(R. 27, 74, 264). From November 1993 through February 1997, Kieser continued to serve the Coast Guard on a "half-duty" status. (R. 74, 210). On February 13, 1997, the Coast Guard retired Kieser because he could no longer perform his work duties by reason of a "permanent physical disability." (R. 25, 71, 74, 157). Kieser alleges that his injury rendered him disabled on March 14, 1999. (R. 69). His disability insurance status expires on December 31, 2002. (R. 14).

On March 9, 2000, the Honorable Chester G. Senf, Administrative Law Judge ("ALJ"), held a 30 minute hearing on Plaintiff's claim in Orlando, Florida. Attorney James Keeter represented Kieser at the hearing. (R. 22–48). On May 18,

2000, the ALJ issued his decision that Plaintiff was not entitled to disability and to disability benefits. (R. 10–16). The ALJ found that Plaintiff retained the residual functional capacity to perform the full range of physical exertional requirements of light and sedentary work. (R. 15, Finding 6). The ALJ applied the Medical–Vocational Guidelines and concluded that Plaintiff was not disabled. (R. 15, Finding 10).

On December 8, 2000, the Appeals Council denied review. (R. 2–3). On February 23, 2000, after obtaining an extension of time, Plaintiff timely appealed the Appeals Council's decision to deny review to the United States District Court. (Doc. No. 1). The United States Magistrate Judge heard oral argument of the appeal on December 18, 2001. (Doc. No. 9).

Plaintiff assigns three errors to the Commissioner. First, Plaintiff claims that the Commissioner erred in not obtaining a vocational expert when the record shows that Kieser suffered from non-exertional impairments that precluded the sole use of grids. Second, Plaintiff claims that the Commissioner improperly evaluated the non-exertional impairment of pain because substantial evidence shows that Plaintiff sustained a traumatic injury resulting in degenerative joint disease and traumatic arthritis that could reasonably be expected to cause the alleged pain. Third, Plaintiff claims that the Commissioner erred in finding that Plaintiff was not "fully credible" after relying on inaccurate or misleading references to the medical evidence.

The Commissioner argues that the ALJ made the correct decision because Plaintiff failed to present sufficient evidence to demonstrate his disability during the time he alleges he was unable to perform work activity. The Commissioner contends that the ALJ's decision was supported by substantial evidence and decided by the proper legal standards.

## STANDARD OF REVIEW

In reviewing rulings by U.S. Magistrate Judges, District Judges are required to apply a "clearly erroneous" standard. 28 U.S.C. § 636(b)(1)(A); *Massey v. United Transp. Union*, 868 F.Supp. 1385, 1388 (S.D.Ga.1994), *aff'd*, 65 F.3d 193, 1995 WL 499994 (11th Cir.1995). "A finding is clearly erroneous if after reviewing the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made." *Anderson v. City of Bessemer City North Carolina*, 407 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)(citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

The scope of this Court's review of an order by an ALJ is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584, n. 3 (11th Cir.1991); *Barnes v. Sullivan*, 932 F.2d 1356,1358 (11th Cir.1991).

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g), under sentence 6 of 42 U.S.C. § 405(g), or under both sentences. *Jackson v. Chater*, 99 F.3d 1086 (11th Cir.1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090–91. Un-

der a sentence-four remand, the district court may enter a judgment affirming, modifying or reversing the decision of the Commissioner with or without remanding the cause for a re-hearing. On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984). After a sentence-four remand, the district court enters a final and appealable judgment and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

The Magistrate Judge's Report and Recommendation provides a thorough review of Plaintiff's medical history and a very careful and complete statement of the relevant law. The court does not need to repeat the Magistrate Judge's recitations of the facts or applicable law in this order.

■ The Magistrate Judge found that the ALJ's decision was not supported by substantial evidence and is not decided by the proper legal standards. Specifically, the Magistrate Judge found that the Commissioner did not meet her burden of determining what work Plaintiff could perform that exists in the national economy, once it was established that Plaintiff could not return to his prior work. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995). In deciding whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Id.* at 1558. The ALJ failed to do so in the instant case.

■ The Magistrate also found that the ALJ failed to consider the extent to which Plaintiff's alleged pain could be reasonably accepted as consistent with the objective medical evidence. This is particularly important because pain is considered a non-exertional impairment. Exclu-

sive reliance on the grids, as the ALJ did in this case, is inappropriate when the claimant suffers from significant non-exertional factors. *Id.* at 1558. Where non-exertional limitations are alleged, the preferred method of demonstrating the claimant can perform specific work is through the testimony of a vocational expert. *Id.* at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir.1986).

■ Finally, the Magistrate Judge found that the ALJ did not articulate with the specificity required by law, the reasons why he discounted the Plaintiff's subjective complaints relating to the degree of pain described by Plaintiff. When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote*, 67 F.3d at 1561–62; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir.1991). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561–62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988). A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir.1982).

The Magistrate Judge found that the ALJ's articulated reasons, resulting from an incomplete or inaccurate reading of the record, did not constitute substantial evidence upon which to reject Plaintiff's complaints as to the degree of pain described by Plaintiff. Moreover, the ALJ's decision does not indicate whether the ALJ accorded any weight to the VA's disability rating.[1] The degree of pain alleged by

---

1. Although a VA disability rating is not binding on the Commissioner, it is evidence that should be given great weight. *Olson v.*

*Schweiker*, 663 F.2d 593, 597, n. 4 (5th Cir. 1981); *Rodriguez v. Schweiker*, 640 F.2d 682,

Plaintiff is a significant non-exertional impairment. Accordingly, the Magistrate Judge found that the ALJ erred in his exclusive reliance on the grids.

For the foregoing reasons, the Magistrate Judge recommended that the Commissioner be reversed and remanded under sentence four of 42 U.S.C. § 405(g). The Magistrate Judge directed that, upon remand, the Commissioner should develop a full and fair record of Plaintiff's residual functional capacity, in light of the limitations (including pain) assessed by his treating and consulting physicians. The Commissioner shall also obtain the opinion of a vocational expert as to Plaintiff's ability to perform the "full range" of either light or sedentary work in light of his exertional and non-exertional limitations.

Based on the pleadings, the record presented, and the applicable case law, the Court finds that the Magistrate Judge's ruling is not clearly erroneous.

Accordingly, the Report and Recommendation of the Magistrate Judge (Doc. No. 12) is **AFFIRMED AND ADOPTED**. The case will be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

## REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

Plaintiff Louis H. Kieser ["Kieser"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for a period of disability and disability insurance benefits. *See* Docket No. 1 (complaint). For the reasons set forth below, the Commissioner's decision should be **REVERSED** and REMANDED.

686 (5th Cir.1981); *Hogard v. Sullivan*, 733

## I. *PROCEDURAL HISTORY*

On December 17, 1998, plaintiff Kieser protectively filed his claim for disability benefits, claiming disability as of March 14, 1997. R. 68—71. On March 9, 2000, the Honorable Chester G. Senf, Administrative Law Judge ["ALJ"], held a 30-minute hearing on Kieser's claim in Orlando, Florida. R. 22—48. Attorney James Keeter represented Kieser at the hearing. R. 24. The ALJ heard testimony by Kieser.

On May 18, 2000, the ALJ issued his decision that Kieser was not entitled to disability and disability insurance benefits. R. 10—16. Following his review of the medical and other record evidence, the ALJ found that Kieser could not perform his past relevant work as a damage controlman (a person who performs construction duties in the United States Coast Guard). R. 15, Finding 6. The ALJ found that Kieser retained the residual functional capacity to perform the full range of the physical exertional requirements of light and sedentary work. R. 15, Finding 6. The ALJ applied the Medical–Vocational Guidelines, and concluded that Kieser was not disabled. R. 15, Finding 10.

On December 8, 2000, the Appeals Council denied review. R. 2—3. On February 23, 2000, after obtaining an extension of time, Kieser timely appealed the Appeals Council's decision to deny review to the United States District Court. Docket No. 1. On August 22, 2001, Kieser filed a memorandum of law in support of his appeal of the denial of review. Docket No. 8. On October 22, 2001, the Commissioner filed a memorandum in support of her decision that Kieser was not disabled. Docket No. 9. This Court heard oral argument of the appeal on December 18, 2001.

F.Supp. 1465, 1470 (M.D.Fla.1990).

Docket No. 9. The appeal is ripe for determination.

## II. *THE PARTIES' POSITIONS*

Kieser assigns three errors to the Commissioner. First, Kieser claims that the Commissioner erred in not obtaining a vocational expert when the record shows that Kieser suffered from non-exertional impairments that precluded the sole use of the grids. Second, Kieser claims that the Commissioner improperly evaluated the non-exertional impairment of pain because substantial evidence shows that Kieser sustained a traumatic injury resulting in degenerative join disease and traumatic arthritis that could reasonably be expected to cause the alleged pain. Third, Kieser claims that the Commissioner erred in finding that Kieser was not "fully credible" after relying on inaccurate or misleading references to the medical evidence. The Commissioner argues that substantial evidence supports his decision to deny disability.

## III. *THE STANDARD OF REVIEW*

### A. *Affirmance*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir.1995), *citing Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982) and *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *accord, Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir.1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir.1991); *Barnes v. Sullivan,* 932 F.2d 1356, 1358 (11th Cir.1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord, Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir.1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B. *Reversal and Remand*

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services,* 21 F.3d 1064, 1066 (11th Cir.1994); *accord Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir.1991); *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990). This Court may reverse the decision of the Commissioner and enter an order awarding disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993); *accord, Bowen v. Heckler,* 748 F.2d 629, 631, 636—37 (11th Cir.1984).

The district court may remand a case to the Commissioner for a rehearing under

sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089—92, 1095, 1098 (11th Cir.1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090—91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829—30 (11th Cir.1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir.1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir.1984) (ALJ should consider on remand the need for orthopedic evaluation). After a sentence-

four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

The court … may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material—relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090—92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir.1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir.1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir.1986); *see also Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir.1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1] *Id.*

---

1. The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n. 4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six re-

## IV. *THE LAW*

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505—404.1511.

### A. *Treating Physicians*

■ Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1439—1441 (11th Cir.1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *Sabo v. Commissioner of Social Security*, 955 F.Supp. 1456, 1462 (M.D.Fla.1996); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

■ Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir.1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527(d)(2).

■ The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determina-

mand, the time runs from the post-remand entry-of-judgment date in the district court.

*Id.*

tion is the providence of the Commissioner. 20 C.F.R. § 404.1527(e).

## B. *Developing the Record*

 The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir.1988); *Cowart v. Schweiker*, 662 F.2d 731, 735—36 (11th Cir.1981). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right. *See* 42 U.S.C. § 406; *Cowart*, 662 F.2d at 734. The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. *See Cowart*, 662 F.2d at 735—36. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Brown v. Shalala*, 44 F.3d 931, 934—35 (11th Cir.1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir.1982). This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735 (citations omitted).

## C. *Medical Tests and Examinations*

 The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir.1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable

the ALJ to render an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir.1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir.1984) (failure to order such an evaluation may be reversible error). Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. 20 C.F.R. § 416.917 (1998).

## D. *The Five Step Evaluation*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled. 20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as

having several hypothetical and isolated illnesses. *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See id.,* 985 F.2d at 534.

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan,* 936 F.2d 1215, 1218 (11th Cir.1991). The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits. *Ware v. Schweiker,* 651 F.2d 408, 411 (5th Cir.1981); *Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir.1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c). If a claimant becomes disabled after the claimant has lost insured status, his or her claim for disability benefits must be denied despite the disability. *See, e. g., Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir.1973); *Chance v. Califano,* 574 F.2d 274 (5th Cir.1978).

### E. *Other Work*

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote,* 67 F.3d at 1558; *Allen v. Sullivan,* 880 F.2d 1200, 1201 (11th Cir.1989). This burden may sometimes be met through exclusive reliance on the Medical–Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2,

§ 200.00(e); *Foote,* 67 F.3d at 1559; *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen,* 826 F.2d 996, 1002–03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote,* 67 F.3d at 1559; *Chester v. Bowen,* 792 F.2d 129, 132 (11th Cir.1986); *see also MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan,* 880 F.2d 1200, 1202 (11th Cir.1989); *Ferguson v. Schweiker,* 641 F.2d 243, 248 (5th Cir.1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote,* 67 F.3d at 1559.

### 1. *Pain*

■■■■■ Pain is a non-exertional impairment. *Foote,* 67 F.3d at 1559, 826 F.2d at 1003. Congress has determined

that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir.1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

#### 2. *Credibility*

 Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561–62; *Jones v. Department of Health and Human Services,* 941 F.2d 1529, 1532 (11th Cir.1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987); *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote,* 67 F.3d at 1561–62; *Cannon v. Bowen,* 858 F.2d 1541, 1545 (11th Cir. 1988).

 A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *See Smallwood v. Schweiker,* 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater,* 67 F.3d at 1562 (quoting *Tieniber v. Heckler,* 720 F.2d 1251, 1255 (11th Cir.1983)) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

### V. *APPLICATION AND ANALYSIS*

#### A. *The Facts*

Kieser was 41 years old on the date that he filed for a period of disability and disability insurance benefits, and was 42 years old on the date of the ALJ's final hearing decision. R. 16, 25, 69. He completed the eleventh grade, obtained a GED, and received vocational training in welding, gas free engineering, and fire fighting while in the United States Coast Guard from 1979 to 1997. R. 25. He has past relevant work experience performing ship and shore maintenance, construction, welding, plumbing, and carpentry in the

Coast Guard. R. 25—6, 75. His primary occupation while in the Coast Guard was that of a damage controlman. R. 26, 87—88. Kieser's alleged disability is based on an August 1993 neck injury—a broken neck-cervical fracture—sustained in a diving accident while on duty. R. 27, 74, 265. R. 74. From November 1993 through February 1997, Kieser continued to serve for the Coast Guard on a "half duty" status. On February 13, 1997, the Coast Guard retired Kieser because he could no longer perform his work duties by reason of a "permanent physical disability." R. 25, 71, 74, 157. Kieser alleges that his injury rendered him disabled on March 14, 1997, when he was nearly 40 years old. R. 69. His disability insurance status expires on December 31, 2002. R. 14.

## B. *The Medical Record*

Kieser's earliest medical records date back to August 1993, when Kieser sustained his neck injury in a diving accident. On August 5, 1993, a full c-spine series of x-rays revealed a severe Jefferson's fracture[2] of the C1 vertebra and a C7 vertebral body fracture. R. 116. Kieser did not have surgery but wore a cervical halo for four and a half months. R. 116, 211. On November 12, 1993, the Veteran's Administration ("VA") neurosurgeon, Dr. Steve C. Sinderman, removed the halo and ordered that Kieser perform no lifting, formations or diving. R. 210. Dr. Sinderman also placed Kieser on "half duty." R. 210. Kieser was placed on a program of physical therapy and pain medication. R. 209.

During 1994 and most of 1995, Kieser seemed to be doing well in regards to his neck injury and pain management. R. 199, 200, 207. However, on December 29, 1995, he presented at the VA clinic complaining of pain, stiffness and limited range of motion in his neck, and was given Ibuprofen 800 mg. R. 192. On January 29, 1996, Kieser again sought treatment of his neck, and indicated that he had progressively experienced increased right-sided neck pain and stiffness. R. 191. After an examination, it was noted that Kieser suffered from chronic neck pain. R. 191.

On February 1, 1996, Kieser's treating VA physician, Dr. Santiago, opined, after reviewing radiographs of the cervical spine, that Kieser suffered from degenerative joint disease, and prescribed more pain medications. R. 189. On February 22, 1996, the treating physician indicated that Kieser had degenerative joint disease with severe limitation of range of motion. R. 183. Furthermore, on this same date, x-rays revealed calcification of C1 and C7. R. 181. The muscle relaxants prescribed did not help much and Kieser had been experiencing numbness in the right arm while sitting straight. R. 181, 182. Thus, Kieser was referred to a neurosurgeon for a recommendation. R. 181.

On April 16, 1996, Dr. Mark Shaffrey, a neurologist, saw Kieser and stated that the MRI and x-rays revealed degeneration at C7. R. 178. Dr. Shaffrey stated that "the patient has significant mechanical neck pain with the exertion that is required to perform his duties." R. 177. He also

**2.** A Jefferson's fracture is classically described as a four part burst fracture of the atlas with combined anterior and posterior arch fractures of the vertebra. (http://www.medmedia.com.) It is caused by the axial blow to the vertex of the head with force transmitted to the spine via the occipital condyles. (http://www.regionsem.org/education/workshop/cspine/c-guide.html). Because the later-

al masses of C1 are wedge shaped, they are forced outward. *Id.* It is an unstable fracture, but patients are usually neurologically intact since the fragments burst outward and the cord is not compromised. *Id.* However, the traverse atlatal ligament is torn by tension from the outwardly displaced lateral masses. *Id.*

opined that the "prognosis is poor for significant recovery and that he can not perform his duties to the extent to remain on active duty in the U.S. Coast Guard." R. 177. Dr. Shaffrey again indicated that Kieser had "persistent neck pain due to degenerative changes and chronic muscle injury." R. 170.

On December 2, 1996, Kieser complained of severe pain interfering with his sleep. R. 171. After examination and range of motion testing, Dr. Gary Rosenthal concluded that Kieser had a significantly limited range of motion in his neck, and he would not achieve a range of motion beyond what he had at that time. R. 171. Physical therapy during December 1996 provided "some response." R. 169. On December 12, 1996, Kieser again presented at the clinic complaining of pain. R. 166—68. Pain medication and Zoloft 50 mg. were prescribed. R. 166—68.

A January 21, 1997 x-ray showed that Kieser's "C7 vertebral body has an irregular shape suggestive of prior compression deformity." R. 164. A radiologist examination revealed degenerative changes of osteophyte[3] formation, decreased disc height and end-plate sclerosis are present at the C6–7 level. R. 164. The impression was degenerative disc disease. R. 164.

On January 23, 1997, Dr. Gary Rosenthal noted that Kieser had a "severe limitation to the c-spine mobility," which was related to impingement at C2 and C7 level of the greater occipital nerve. R. 162. On February 4, 1997, the United States Coast Guard Physical Evaluation Board evaluated Kieser's condition and recommended that he be permanently retired from the Coast Guard. R. 157–161. On February 13, 1997, Kieser was permanently retired from the Coast Guard. R. 157.

On July 28, 1998, Kieser presented with pain in the back of his neck radiating into his right extremity, and complained that the medications were not providing relief. R. 156. A new medication, Prednisone, was prescribed. R. 156. Thereafter, he continued to complain of neck pain, stiffness, radiating pain and numbness into his right arm, and several medications were tried without much relief. R. 153, 154. Kieser additionally complained on left knee pain in September 1998. R. 152.

An MRI dated November 18, 1998 revealed an annular bulge at C3–4; a mild annular bulge with accompanying posterior osteophytes transversely effacing the thecal sac and subarachnoid space at C4–5; and, a mild annular bulge and transverse posterior component effacing the thecal sac and subarachnoid space at C6–7. R. 151. On November 23, 1998, Kieser complained of difficulty with sitting, neck pain and stiffness, and right arm radicular pain. R. 149. The doctor concluded that Kieser suffered from "cervical spine disease" and "neck pain." R. 149. Around this time period Kieser attempted computer training with Vocational Rehabilitation. He was unable to continue due to pain from sitting and stress. R. 36,148, 149.

On January 22, 1999, Kieser indicated that the muscle relaxants were helping his pain. R. 145. But, a few months later Kieser indicated that the pain "was in the extreme levels." R. 143. On April 22, 1999, he indicated that he continued to have pain and intermittent numbness of the right arm. R. 144. After the evaluation, the doctor concluded that Kieser suffered from "traumatic arthritis cervical spine" and "cervical radiculopathy." R. 143.

---

**3.** An osteophyte is a bony excrescence or outgrowth, usually branched in shape. Taber's Cyclopedic Medical Dictionary 1368, (Clayton L. Thomas et al.eds. 18th ed.1997).

Kieser presented again on July 21, 1999 with ongoing neck pain and stiffness, as well as right hand tingling. R. 141. Dr. Michael Deichen assessed him with traumatic cervical spine degenerative joint disease, and indicated that he should continue with medications. R. 141.

## C. *The Analysis*

Kieser has not engaged in substantial gainful activity since his alleged onset date of March 14, 1997. The ALJ found that Kieser has ongoing pain from a cervical fracture, a "severe" impairment. R. 15. The ALJ also found that Kieser's impairment did not meet or equal a listed impairment. R. 15. However, the impairment did prevent Kieser from performing his past relevant work as a damage controlman. R. 15, Finding 6. The ALJ determined that, despite ongoing pain from the cervical fracture, Kieser retained the residual functional capacity (RFC) to perform a full range of light and sedentary work. Based on this RFC, the ALJ determined that the Medical–Vocational Guideline Rules 201.28 and 202.14 warranted a finding of not disabled. R. 15.

The ALJ's decision is not supported by substantial evidence and is not decided by the proper legal standards. Because Kieser could not return to his prior work, the burden shifted to the Commissioner to prove that Kieser could perform other work that exists in the national economy. The Commissioner failed to meet her burden of proving that Kieser could perform work which exists in significant numbers in the national economy, consistent with Kieser's impairments, functional limitations, age, education, work experience, and skills.

At the hearing before the ALJ, Kieser testified that he is in pain about half the time. R. 28. He can drive, but turning his head from side to side is painful. R. 28. He explained that his pain extends down from the base of his skull and into his shoulders. R. 28. Kieser feels the pain radiate down his right arm and into his fingertips. R. 29. He can walk 100 yards and stand for 10 minutes before he has leg pain and swelling. He can sit, depending on the type of chair, for about 30 minutes. His pain occurs with extended sitting. R. 28. He can bend, but cannot stoop. He can climb stairs very slowly. R. 28. He is pain while sleeping and awakens every few hours. Kieser lives with his mother and helps with the dishes and laundry. He can bathe and dress without assistance and take his mother on errands.

Kieser consistently complained of pain to his treating doctors. R. 141—45, 148, 149, 152—154, 156, 162, 166, 167—8, 170 – 71, 177, 181, 132—83, 188, 191, 199, 200, 207. The objective medical evidence shows that Kieser sustained a severe Jefferson's fracture of the C1 certebra and C7 vertebral body fracture. Kieser suffered from traumatic arthritis and degenerative joint disease with a severe limitation of range of motion in his neck. R. 141, 143, 148, 149, 164. The pain Kieser experienced, according to his treating physicians, was the result of these impairments. The diagnoses of degenerative joint disease and traumatic arthritis were obtained through the use of MRIs and x-rays, objective medical evidence. R. 148, 164, 181, 182, 199.

Kieser's reported complaints and the objective medical evidence indicate that Kieser has medical conditions that could reasonably be expected to cause pain. No treating or examining physician has ever questioned the existence or the extent of Kieser's subjective symptoms or suggested that he was malingering. Rather, the treating physicians continued to prescribed pain medication and pain management.

Indeed, the ALJ acknowledged that Kieser had ongoing pain. R. 15. However, the ALJ concluded that "[t]here appears to be some symptom magnification and lack of motivation by the claimant." R. 13. He arrived at this conclusion after stating that "the undersigned is also unable to find any evidence of varicose veins or severe bilateral knee impairments." However, the record indeed confirms that Kieser suffered from and had been treated for these impairments with his treating physicians. R. 279, 281—312, 303, 452, 453.

The ALJ also stated that "[t]here is no evidence the claimant was undergoing any physical therapy and on several occasions he was noted as saying that his medication helped." R. 13. The record, however, does show that Kieser underwent physical therapy. R. 169, 209. However, it did not offer Kieser much relief. R. 169, 209. In regards to his medication helping, Kieser did state on January 22, 1999 that the muscle relaxants were helping his pain (R. 145), but this relief was short-lived, and shortly thereafter Kieser reported that the pain "was in the extreme levels." R. 143. Additionally, there are several references throughout the record that indicate the pain medication was not providing pain relief. *See* R. 153—54, 156, 181—82.

The ALJ's articulated reasons— resulting from an incomplete or inaccurate reading of the record—do not constitute substantial evidence upon which to reject Kieser's subjective complaints relating to the *degree* of pain described by Kieser. Moreover, the ALJ's decision does not indicate whether the ALJ accorded any weight to the VA's disability rating.[4] The degree of pain alleged by Kieser is a significant non-exertional impairment. The ALJ erred in his exclusive reliance on the grids.

Remand would be unnecessary in this case if all of the essential evidence were before the Appeals Council when it denied review, and the evidence were to establish without any doubt that Kieser was disabled. This case falls short of the standard for outright reversal without remand. Remand under Sentence Four is appropriate because the record is insufficient to affirm, but also is insufficient for the district court to find Kieser disabled without any doubt. The Commissioner's decision is not supported by substantial evidence.

On remand, the Commissioner should develop a full and fair record of Kieser's residual functional capacity, in light of the limitations (including pain) assessed by his treating and consultative physicians. The Commissioner also shall obtain the opinion of a vocational expert as to Kieser's ability to perform the "full range" of either light or sedentary work in light of his exertional and non-exertional limitations.

## V. CONCLUSION

For the reasons stated above, it is

**RECOMMENDED** that the decision of the Commissioner be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g).

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within eleven days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the fac-

---

4. Although a VA disability rating is not binding on the Commissioner, it is evidence that should be given great weight. *Olson v. Schweiker,* 663 F.2d 593, 597 n. 4 (5th Cir. 1981); *Rodriguez v. Schweiker,* 640 F.2d 682, 686 (5th Cir.1981); *Hogard v. Sullivan,* 733 F.Supp. 1465,1470 (M.D.Fla.1990).

tual findings on appeal. Any party appealing this decision shall file and serve a copy of the oral argument transcript within thirty days of this order.

Feb. 12, 2002.